(38 South. 253.)

No. 15,305.

MARTEL et al. v. JENNINGS–HEYWOOD OIL SYNDICATE et al.*

(Feb. 4, 1905.)

MINING LICENSE—WHAT CONSTITUTES—ABANDONMENT—SUBSEQUENT LEASE—RIGHTS OF PARTIES.

1. Where A. and B., owning adjoining tracts of land, joined in a lease of the same to C. for the term of 99 years, for the purposes of prospecting, boring, excavating, etc., for oil, gas, petroleum, coal, salt, sulphur, and other minerals, during that period for the consideration of one dollar and a royalty of one cent for each barrel of oil sold, and the same proportionate value for all other minerals, A. to have one-third of the royalty accruing from the land of B., and vice versa; and where C. did not bind or obligate himself to prospect or to do any work on the premises, held, that such an agreement is not a contract of lease, but a mere permit or license, revocable and terminable at will.

2. Where, within 30 days thereafter, B. leased his tract of land to C. for one year, and on different terms and conditions, the lessee binding himself to develop the property for oil and other minerals, and the royalty, fixed at one-eighth of the oil, was made payable to B. alone, held, that the first lease was abandoned and terminated, and was no longer binding on A.

3. Where, after subsequent discovery of oil on the B. tract, C. entered on the land of A. for the purpose of erecting a derrick thereon, and was enjoined by A., who soon thereafter sold a fifth interest in the land to plaintiffs, held, that they acquired a title free of the first lease, and were not affected by the subsequent compromise of the suit and the recognition by A. of the first lease in a modified form.

4. Where, under such compromise lease, the tract of land was developed into an oil-bearing territory, held, that plaintiffs, as owners of an interest in the land, are entitled to a like interest in the oil produced, less all expenses of production.

(Syllabus by the Court.)

Appeal from Eighteenth Judicial District Court, Parish of Acadia; Conrad De Baillon, Judge.

*Rehearing denied March 27, 1905.

Action by J. Sully Martel and others against the Jennings-Heywood Oil Syndicate and others. Judgment for defendants, and plaintiffs appeal. Reversed.

D. Caffery & Son, J. Sully Martel, Branch Knox Miller, and James L. Dormon (Richardson & Soulé, of counsel), for appellants. Frank Andrews and T. M. & J. D. Miller, amici curiæ, on behalf of appellants. Chappuis & Holt and Gilbert Louis Dupré (Julian Mouton, of counsel), for appellees.

LAND, J. Laurent Arnaudet and Jules Clement each owned tracts of land near Jennings, La., having a combined area of 442 acres.

On April 6, 1901, Arnaudet and Clement entered into an agreement with one Dr. A. C. Wilkins, by which they leased and let unto said Wilkins, for the full period of 99 years from the date of the contract, the following described real estate, to wit:

"The north one-fourth of sec. 47, known as the Anthony Cockran claim; and the fractional section 46; also section 49, township 9 S., range 2 West, La. Merd., containing 442 acres, more or less."

The consideration was the sum of one dollar, and the stipulation that Wilkins, his heirs and assigns, should pay to the lessors "one cent for each barrel of oil marketed or sold" by the lessee, and for all other minerals or elements obtained from said lands "the same proportionate value as that of oil." It was agreed that "two-thirds of the profits" should accrue to the owner of the lands upon which wells or shafts were situated and one-third to the other lessor. The following stipulations were embodied in the contract, viz.:

"This lease does not include the surface of said land, except in so far as the use of the surface may be necessary or convenient for the accomplishment of the object and purposes hereto set forth; but the lease does apply to the fullest extent to all of said land below the surface, and especially to all natural oils, gas, petroleum, coal, sulphur, salt or any other element or mineral that may be of use or value, which may exist beneath the surface of said land, and which may be mined, pumped, or ex-

tracted or in any manner obtained or procured from, out of or under said land or which may flow therefrom during the continuance of this lease, subject to the conditions hereinafter set forth; and to that extent this contract shall operate as, and have the full force of a sale, between the parties.

"The said parties of the second part, their heirs and assigns, shall have, during the time above specified, free ingress and egress to and from said land at any and all times for the purpose of making examinations of the same, and for the purpose of prospecting, drilling or boring, or digging or excavating, of any or all such wells or shafts or excavations, and also for the purpose of erecting or placing any machinery, buildings or apparatus or works, as they may deem necessary, convenient or proper, for the purpose of prospecting or searching for oil, gas or other elements of value, and for the purpose of mining, extracting or procuring, storing or transporting the same; and said parties of the second part shall have the right at any and all times to send on said land, and cause or permit to stay there, any and all such workmen, agents or employés, as they may deem necessary to their intents or to the carrying out of the objects and purposes herein set forth. And the said parties of the second part shall have during the continuance of this lease free use of so much of the surface of said land as may be necessary or convenient to accomplish the object or purpose herein set forth."

On April 24, 1901, Wilkins transferred all his right, title, and interest in said agreement unto S. A. Spencer & Co., who, on May 8, 1901, entered into a contract with Jules Clement, in which it was stipulated that the lease of April 9, 1901, should be null and void in so far as the interest of Clement appeared, and it was declared that this last lease was made to supersede the first. Under this contract of May 8, 1901, Clement leased fractional section 46 and 49 and part of south half of fractional section 53, T. 9 S., R. 2 west, containing about 300 acres, more or less, for the sole and only purpose of mining and operating for oil, gas, or any minerals or mineral substances.

The lease was to remain in force for one year, and as long thereafter as oil or gas or either of them was produced. The lessor was to receive "one-eighth part of all oil produced and saved from the leased premises," and $250 per year for the gas from each and every gas well drilled on said prem-

ises. The lessor bound himself to commence operations on said premises within one year from the date of the contract, or pay at the rate of $25 quarterly in advance for each additional three months such operation was delayed until such a well was completed. The lessees reserved the right to surrender the lease at any time upon the payment of $1.

Spencer & Co. took immediate steps to develop the Clement property. Drilling began in June, and an oil well was "brought in" in September of the same year.

During the latter part of October, 1901, Spencer & Co. entered on the lands of Arnaudet, and commenced the erection of a derrick thereon for the purpose of sinking a well. Thereupon Arnaudet filed suit to annul the lease of April 9, 1901, on the ground that it was obtained by fraud, and enjoined Wilkins and Spencer & Co. from trespassing on his property.

In December, 1901, the Corkran Oil & Development Company brought suit against Arnaudet and others, claiming title to that part of the Corkran grant involved in the Wilkins lease. See 111 La. 563, 35 South. 747. It may be stated that this suit was decided in the district court in favor of defendants, and that the judgment was affirmed by the Supreme Court in November, 1903. Plaintiffs therein thereupon sued out a writ of error from the Supreme Court of the United States.

On December 20, 1901, Arnaudet executed to the plaintiffs in the present suit, to compensate them for their professional services, especially in the Corkran suit, a dation en paiement of "the one undivided fifth (⅕) of the right, title, and interest in and to the north quarter of section 47, township nine (9) south, range two (2) west, Louisiana meridian," being a portion of the lands described in the Wilkins lease of April, 1901.

In October, 1902, Arnaudet filed a supplemental petition in his injunction suit, in

which he alleged that said Wilkins lease was null and void for want of consideration and mutuality, and was a mere nudum pactum, not binding on the parties; that said lease was superseded, abrogated, and set aside by the contract of May 8, 1901, between Jules Clement and Spencer & Co., by which the entire royalty from oil produced on Clement's premises was to be paid to him; and that said pretended contract had been actively violated by the sale by said parties to the Southern Oil Company of the only portion of the Clement property valuable for oil production. The Jennings-Heywood Oil Syndicate, as claimant to lease of April, 1901, was made a party to the injunction suit.

In February, 1903, the injunction suit of Arnaudet was dismissed in accordance with his letter of instructions to counsel for defendants therein. This letter concludes as follows:

"This is done by virtue of the agreement reached and entered into by and between myself and the Jennings-Heywood Oil Syndicate whereby the original contract of 10th day of April, 1901, is modified and enlarged so as to cover any and all complaints which I have had, and which were leveled against the defendants in above suit."

This compromise agreement changed the original lease so as to make it a contract between Arnaudet and the syndicate, and to eliminate Clement. The consideration was made the same as stated in the lease from Clement to Spencer & Co., executed in May, 1901, but the syndicate bound and obligated itself to begin drilling and boring for oil within 30 days from the date of the agreement.

This was done, and as a result several oil wells were "brought in" on the Arnaudet land prior to the filing of the present suit on July 13, 1903.

Plaintiffs sued to be recognized as owners of one undivided fifth interest in the Arnaudet tract of land, and to cancel the recorded leases on the same held by the defendants as far as said leases affect said interest.

At the instances of plaintiffs a judicial sequestration was issued ordering the sheriff to take into his possession one-fifth of all the oil produced on the premises in dispute.

Plaintiffs allege that the lease of April, 1901, was a mere nudum pactum because by its terms performance of the part of the lessee was purely optional, and consequently the agreement was void for want of consideration and mutuality.

Plaintiffs further allege that, if said lease was ever valid, it was violated, set aside, and superseded by the subsequent lease of May 8, 1901, and by the sale of a portion of the Clement property to the Southern Oil Company in December, 1901.

Plaintiffs allege that the so-called ratification of February 3, 1903, between Arnaudet and the syndicate was in fraud of their vested rights, which could not be waived by their vendor.

The defendants answered that the contract of lease in favor of Wilkins was a lawful executory contract, and that it had been executed long prior to the time when plaintiffs acquired their alleged rights to the land, which right, if any they had, could not extend beyond one-fifth of such royalty as Arnaudet was entitled to at the time of the dation en paiement.

Plaintiffs acquired an interest in the land in controversy pending the suit of Arnaudet to annul the first lease on the ground of fraud. They did not intervene in said suit, but appeared therein as counsel for Arnaudet in the matter of the supplemental petition assailing said lease as a nudum pactum or as having been annulled or vacated by the subsequent contract between Clement and Spencer & Co. This suit having been compromised, and a new or modified lease made by Arnaudet to the syndicate, plaintiffs were driven to assert whatever rights they had by another action.

Plaintiffs were no parties to the first lease, and therefore have no right to rescind the

same on the ground of fraud, or for other causes personal to Arnaudet. They do not seek to do so, but allege that the Wilkins lease is null and void on its face, and, if not, that it was abrogated and superseded by the lease made by Clement to Spencer & Co.

The contract of April 9, 1901, was intended as an oil and mineral lease. The consideration was a certain royalty to be paid in the future. Oil was one of the objects had in view, and as to it the royalty was fixed at one cent for each barrel marketed or sold by the lessee or assigns. By the terms of the contract the rights of the lessee to exploit the premises for any and all of the purposes therein mentioned was to continue for the full period of 99 years. During that time he was to have the right of free ingress and egress for the purpose of "making examinations," of "prospecting," "drilling or boring or digging or excavating," etc. The contract left the kind of work to be done and the time of its commencement to the option of the lessee. He did not obligate himself to bore for oil, gas, or petroleum, or to mine for coal, sulphur, salt, or other minerals. If the lessee had obligated himself to do any particular work on the premises, the prosecution of such work within a reasonable time and with due diligence might be implied. But as he was at liberty to use the premises for any of the purposes specified in the lease, his choice could not be limited by implication to any particular purpose.

The Civil Code declares that "every contract has for its object something which one or both parties oblige themselves to give or to do or not to do," and that "on the breach of any obligation to do or not to do, the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract." Arts. 1883, 1926. Hence there can be no contract "to do" unless the party obliges himself to do some particular thing, and, as Wilkins did not engage or oblige himself to do any particular

work, there was no contract between the parties by which he was bound to his lessors. It follows that the obligation to perform was optional with the lessee, and, as a consequence, that the agreement was terminable at the will of the lessors. The agreement was a mere permit or license, which bound neither party. Such bald, unilateral agreements are rare. In Federal Oil Co. v. Western Oil Co. (O. C.) 112 Fed. 373, it was held that an instrument which did not bind the lessee to commence or prosecute operations was a "nudum pactum, and void." Running through all the decisions on the subject of oil and mineral leases is the principle that in such contracts the real consideration is the development of the property for oil or minerals in the near future. It is therefore evident that, unless the lessee obligates himself to commence operations within a certain or reasonable time, the lessor is not bound for want of mutuality and consideration.

We therefore hold that the Wilkins lease was terminable at the will of any of the parties. Less than one month after its execution the lessee and one of the lessors made a separate contract for themselves covering the larger part of the territory embraced in the Wilkins lease. That Clement and Spencer & Co. had the right to make such contract is sustainable only on the theory that they had the right to withdraw from the Wilkins lease and to terminate it as far as they were concerned. Otherwise they had no right to change or modify its provisions inter sese without the consent of Arnaudet, and to his prejudice.

That Clement and Spencer & Co. intended to abandon the Wilkins lease is shown not only by the change of conditions, but by the express stipulation in their contract that all the royalty accruing from the Clement property should be paid to him. Under the Wilkins lease one-third of such royalty was payable to Arnaudet. Under the new lease the

lands of Clement were separated from the lands of Arnaudet, and were developed under an entirely different contract. Arnaudet was ignored, and no operations were commenced on his property. It was not until late in October, 1901, and after oil had been discovered on the Clement property, that Spencer & Co., or their assigns, made an attempt to gain a foothold on the Arnaudet lands. A derrick was erected, and therefrom Arnaudet enjoined further proceedings. We think it evident that Clement and Spencer & Co. elected to abandon the Wilkins lease, as they had a right to do, and that the same became inoperative on and after May 8, 1901. The second lease and the conduct of the parties can be explained on no other reasonable hypothesis. As to the compromise lease made by Arnaudet in 1903, it cannot affect plaintiffs, because it was executed long after plaintiffs' title was recorded. It was under this compromise lease that the Arnaudet lands were developed into oil-bearing territory.

Plaintiffs had a title of record to one-fifth interest in the lands, and were not bound to take legal steps to stop operations thereon. Defendants had notice of such title, and proceeded at their peril. The Civil Code declares that "the fruits produced by the thing belong to the owner though produced by the work and labor of a third person, on the owner reimbursing such person his expenses." Article 501. Laurent in discussing Code Nap. art. 548, corresponding to Civ. Code, art. 501, says:

"C'est un motif d'équité qui ne permet pas que le proprietaire s'enrichisse aux dépens du possesseur, fût-il de mauvaise foi. Ce motif s'applique à toutes les dépenses que le possesseur a dû faire." Droit Civil Francais, tome 6, p. 312.

The Jennings-Heywood Oil Syndicate took possession of the land in question, and made leases, in some instances for cash, to other persons or corporations, who developed the wells. Under such circumstances and conditions the question of "expenses" is one of much difficulty and complexity. The pleadings and evidence are not sufficient to enable us to pass on this question, and we are compelled to remand the case on this point.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed; and it is further ordered and decreed that plaintiffs herein be recognized as the owners of an undivided one-fifth interest in the Arnaudet tract of land, containing 145 acres, more or less, as described in their petition in this cause, free from all the leases therein set forth as recorded against said tract of land, and that said leases be canceled by the clerk and ex officio recorder of the parish of Acadia, in so far as they affect said one undivided one-fifth interest; and it is further ordered and decreed that plaintiffs are entitled to and do have and recover of the defendants herein, the Jennings-Heywood Oil Syndicate and its lessees or assigns, one-fifth of all the oil produced by said defendants on said tract of land, on plaintiffs reimbursing one-fifth of all the expenses, ordinary and incidental, incurred in producing, transporting, and preserving the same, and, if sold, the additional expenses of sale; and it is further ordered and decreed that this cause be remanded, with leave to amend, for the purpose of determining the quantity of oil to which plaintiffs are entitled, and the expenses to be reimbursed or deducted, and for an accounting between the parties; and it is finally ordered and decreed that the writ of sequestration herein be reinstated and maintained, and that the defendants pay all costs of suit.