A. D. RINGLE *et ux.* V. A. R. QUIGG *et al.*

No. 14,690.   (87 Pac. 724.) ·

SYLLABUS BY THE COURT.

1. CONTRACTS—*Cancelation of Gas-and-oil Lease—Petition—Demurrer.*   In a suit by the lessor to cancel a gas-and-oil lease on the ground that it was void, the petition alleged the execution of the lease, giving a copy thereof, which is given hereinafter.   No facts outside of the lease itself indicating imposition, fraud or mistake, or that the interests of the lessor were being or would be injuriously affected by any of the provisions of such instrument, were stated in the petition. *Held,* that a general demurrer to such petition was properly sustained. .

2. —————— *Conditional Option to Keep Lease in Force.*   A gas lease is not void merely because the lessee stipulates therein that at the end of five years he shall have the option to keep the lease in force by then doing some act which at the date of the lease he is unable to perform. ·

3. —————— *Performance of Conditions.*   A lessor in a gas lease has no right to expect the lessee to perform the conditions therein on his part immediately when by the provisions of the instrument the lessee is permitted to delay performance for five years. ·

4. —————— *Ambiguity.*   A written instrument is not void for ambiguity when the contract of the parties can be clearly and certainly ascertained therefrom. ·

5. —————— *Gas-and-oil Lease — Royalties — Time of Beginning Operations.* ·Although obtaining royalty may be the essence of a gas-and-oil lease, the time when operations under the lease shall commence is a proper subject of agreement between the parties, and, in the absence of imposition, fraud or mistake, the provisions of the contract should be upheld.

Error from Montgomery district court; THOMAS J. FLANNELLY, judge.   Opinion filed November 10, 1906. Affirmed.

## STATEMENT. ·

ON the 19th day of December, 1900, the plaintiffs in error (plaintiffs below) were the owners of the lands in controversy and occupied the same as a residence

and homestead. On the date above mentioned they executed and delivered to defendants A. R. Quigg and others a lease which reads:

"This agreement, made and executed in duplicate this 19th day of December, A. D. 1900, between A. D. Ringle and Sarah Ringle, parties of the first part, and A. R. Quigg, O. L. Hayward, S. S. Harmon and M. L. Stephens, of Elk City, Kan., parties of the second part,

"Witnesseth: That the said parties of the first part, for the consideration of one dollar in hand paid, the receipt of which is hereby acknowledged, and other valuable considerations, hereinafter mentioned, do hereby lease, demise and let to the said party of the second part, their heirs or assigns, for the term of twenty (20) years, and as much longer as gas or oil may be found in paying quantities, from the date hereof, the following-described real estate situated in the county of Montgomery and state of Kansas, to wit, the northwest quarter (N. W. ¼) except one acre to school, of section 35, township 32 south, of range 13 east of the sixth principal meridian, containing 159 acres, with full and exclusive power and authority to the party of the second part, or their heirs or assigns, to enter upon the above-described lands and drill, dig or mine for gas, oil or any other mineral or substance of commercial value, taking upon and removing from said land any machinery or appliances necessary to the prosecution of said work; to erect any necessary buildings, tanks or tracks for the legitimate use of said work or the products thereof, and to remove or convey said products off said land by any reasonable methods, and the right from time to time to repair and replace the same, avoiding as far as may be practical damage to growing crops or fences, but in case of such damage to pay same as may be determined by appraisers.

"In consideration of the premises, the party of the second part agrees to pay as royalty to the parties of the first part upon each well of gas from which any product is taken, having any commercial value, the sum of five dollars per month for each month while so taken. Royalties to be paid in cash on the first day of each month for the preceding month, payable at Elk City, Kan. In case that oil or other products than gas are found the royalty shall be one-tenth of such product delivered at the surface near mouth of well or shaft.

Ringle v. Quigg.

"It is mutually agreed that the parties of the second part shall begin operations on this lease within five years (5 yrs.) from the delivery hereof, or, in case of failure to do so, then and in that case it shall be at the option of party of the second part to lay pipes from mains or wells to within fifty feet of residence occupied by first party on above-described land, and furnish gas for ———— stoves and for ———— lights, and no other or additional expense shall be incurred under this lease by second party, and this lease shall be binding so long as gas shall be thus furnished, provided, that if wells are sunk, royalties shall be paid as above provided for, otherwise this lease shall be null and void, and no longer binding on either party.

"It is mutually agreed that if gas is discovered on said land the parties of the first part shall have free of charge a sufficient quantity of gas for three stoves and three lights, to be taken at the well so discovered and utilized, or at the nearest pipe-line, and' that the party of the second part, or its assigns, shall have gas if so discovered without royalty for the further development or use of said products herein provided for on the above-described land.

"In consideration of the premises the parties of the first part give and grant to the party of the second part, or its successors or assigns, the exclusive right to lay and maintain and remove pipe-lines for gas and oil, over and across said land, said pipe-lines to be laid at least twelve inches under the ground unless otherwise mutually agreed, and the surface of the ground left as near as practicable in its original condition.

"The party of the second part agrees to do no drilling within 200 feet of the building (house or barn) unless mutually agreed upon.

"Witness our hands and seal the day and year above written."

This lease was duly acknowledged on the same day, and recorded in the office of the register of deeds March 12, 1903. The lessees afterward assigned their interest in the lease to defendant the Elk City Gas and Oil Company, and it executed and delivered to defendant the R. J. Waddell Investment Company a written instrument, the legal nature and effect of which does not appear, except that it was given as security. This

instrument was recorded in the office of the register of deeds and constitutes a cloud upon the plaintiffs' title to the leased premises. On July 13, 1903, the plaintiffs notified the lessees and their assigns that unless they canceled the lease suit would be brought to compel the cancelation thereof as void. Upon failure of the lessees to comply with this notice plaintiffs, on July 24, 1903, commenced this suit in the district court of Montgomery county.

The petition was amended from time to time and a second amended petition was filed March 15, 1904, containing three causes of action. The defendant the Elk City Gas and Oil Company filed a general demurrer to each of these causes of action separately, which was by the court sustained, and judgment entered against the plaintiffs for costs.

The petition to which the demurrer was sustained is very lengthy, and the averments in the different causes of action are duplicated to such an extent that it will be unnecessary to give a copy thereof at length, but so much as will give an intelligent view of the court's decision may be stated as follows:

### "FIRST CAUSE OF ACTION.

"(1) Leave of the court obtained to file this second amended petition, the plaintiffs represent and allege that they are husband and wife and that said defendant, the Elk City Gas and Oil Company, is a corporation organized under the laws of the state of Kansas, with its principal office at Elk City, Montgomery county, Kansas, and that said defendant, the R. J. Waddell Investment Company, is also a corporation with one place of business or office at Kansas City, state of Missouri.

"(2) Said plaintiffs further represent that on the 19th day of December, 1900, they were, ever since have been, and at this time are, the owners in fee and the sole occupants of the following-described land, situated in Montgomery county, Kansas, to wit, the northwest quarter ($\frac{1}{4}$) of section thirty-five (35) in township thirty-two (32) south, of range thirteen (13) east, except one (1) acre; that on the date aforesaid, at said

Ringle v. Quigg.

county and state, said defendants, Quigg, Hayward, Harmon and Stephens, obtained from said plaintiffs a certain printed and written instrument, and then and there assigned the same to their codefendant, the Elk City Gas and Oil Company, which said instrument appears of record in the office of register of deeds in said county in deed record 66, at page 297, a true copy of which said instrument, including said assignment, is hereto attached, marked 'Exhibit A,' and made a part of this second amended petition and first cause of action.

"(3) And said plaintiffs further represent and allege that said instrument was and is null and void, and that they have declared their intention to treat said instrument as null and void, and on the 13th day of July, 1903, they notified said defendants in writing that they, said plaintiffs, intended so to treat said instrument and demanded said defendants to cancel and release the same of record within ten days, but that said defendants refused and still refuse, though neither of said defendants had endeavored to occupy said land by virtue of said instrument prior to the service of said notice, nor have said defendants or either of them before or since the service of said notice made any movement or attempt toward beginning operations on said land, or endeavored to occupy the same or any part thereof for the purpose of beginning operations thereon by virtue of said instrument.

"(4) And said plaintiffs further represent that said instrument was and is null and void and subject to cancelation, because they say that said defendants did not, nor did either of them, directly or indirectly, pay said plaintiffs, or either of them, the consideration of one dollar specified in said instrument, nor any sum or other thing of value whatsoever in consideration for the making and delivery thereof.

"(5) The said plaintiffs further allege that said defendant, the R. J. Waddell Investment Company, claims an estate in said lands through some transaction had with its codefendant, the Elk City Gas and Oil Company, which said transaction said plaintiffs allege was and is null and void.

"(6) Said plaintiffs therefore demand judgment against said defendants and each of them, their assigns and successors and each of them, that said instrument, to wit, the aforesaid so-called lease, be decreed to be

null and void, vacated and set aside and held for naught; and that each and all of said defendants, their assigns and successors and each of them, be decreed to be foreclosed of all interests and estates they or either of them may claim in said land. And said plaintiffs demand judgment and costs.

## "SECOND CAUSE OF ACTION.

[Paragraphs 1, 2 and 3 of this cause of action are the same as the first three paragraphs of the first cause of action as above set out.]

"(4) And said plaintiffs allege that said instrument was and is null and void because of the several causes and infirmities hereinafter set forth:

"First, because, at the time of, and prior to, the making and delivery of said instrument, said plaintiffs had no knowledge or means of obtaining knowledge of and concerning the authority, powers and rights of the lessees and their assigns to lay pipes and mains over, on and within the lands in the neighborhood of and adjacent to plaintiffs' lands, so as to provide the plaintiffs with gas for fuel and lights in the event of failure for five years on the part of said lessees and their assigns to begin operations on said lands by virtue of said lease; and while said plaintiffs allege that the real value of sufficient of the gas product to provide said plaintiffs with fuel and lights was and is wholly inadequate and unconscionable as compared with considerations to be realized by said lessees and their assigns therefor, and wholly inadequate and insufficient as a penalty to guarantee the performance on the part of said lessees and their assigns, or as compensation for said plaintiffs for damages resulting from non-performance, they also allege that said defendants have not, nor has either of them, at any time owned or had control over mains or wells from which pipes could have been laid to within fifty feet of plaintiffs' residence; nor have said defendants or either of them at any time had the lawful right to lay pipes and mains, or either, over, on or within the lands within the neighborhood of, or adjacent to, the lands specified in said lease; nor have said defendants or either of them at any time had any assurance that they or either of them could obtain such right.

"Second, because at the time said plaintiffs made and delivered said instrument they had reason to and did believe that said lessees would cause operations to

Ringle v. Quigg.

be commenced on said lands for the discovery of gas
and oil soon after such delivery, and especially within
reasonable time thereafter, notwithstanding the period
of five years written therein, all which said lessees and
their assigns at the time of the delivery and assignment
of said lease, respectively, well knew; wherefore, said
plaintiffs further allege that operations on said lands
for the discovery of gas and oil within reasonable time
after the delivery of said lease and the vigorous prose-
cution of such operations were of the essence of the
contract, all which said lessees and their assigns at the
times aforesaid well knew; which said reasonable time,
said plaintiffs allege, had elapsed long prior to the
service of the notice aforesaid on said defendants.

"Third, because the terms of said lease are ambigu-
ous and uncertain, and by reason thereof said plaintiffs
cannot anticipate future performance and operation
by said lessees or their assigns for the development of
said land for the discovery of gas and oil, and therefore
said plaintiffs, by reason of the premises, are and will
be interrupted and hindered in the free enjoyment and
disposition by them of their said land, to the great and
irreparable injury to themselves and their heirs.

"Fourth, because, by the terms of said lease, said
lessees and their assigns are under no obligation to pay
any consideration whatever, other than a prospective
royalty, dependent on so-called covenants, leaving it to
the option of said lessees and their assigns to develop
said lands for gas and oil.

"Fifth, because the terms of said instrument do not,
by inference or otherwise, impose any obligation on
said lessees and their assigns, or on either of them, to
begin operations on said land to explore for gas and
oil, nor to continue such operations—such operations
and the continuation thereof being the essence of the
contract; nor do said terms provide for the forfeiture
or payment of any sum whatsoever by said lessees or
their assigns as compensation for, or damages sus-
tained by, said plaintiffs, their heirs and assigns, in the
event of the failure or refusal of said lessees and their
assigns to develop said land, or to explore thereon for
gas and oil.

"Sixth, because the terms of said lease do not con-
tain any of the necessary covenants for the establish-
ment of the elements of mutuality as to considerations
and obligations imposed or intended to be imposed

upon said parties, their heirs and assigns respectively; and the disparity between performances required of the parties respectively is so unreasonably great and unconscionable as to render it voidable.

"Seventh, because it was the design of said lessees, as plaintiffs allege, to procure said lease and assign the same for the purposes of speculation only, and thereby realize profit without creating any liability against themselves, their heirs or assigns, by virtue of said instrument.

"Eighth, because it was and is the design of said defendant, the Elk City Gas and Oil Company, as plaintiffs allege, to procure the assignment of and hold said lease for the purposes of speculation only, and thereby realize profit without paying value therefor and without creating any liability against said defendant company or the members thereof.

"And said plaintiffs further allege that said defendant, the R. J. Waddell Investment Company, claims an estate in said lands through some transaction had with its codefendant, the Elk City Gas and Oil Company, which said transaction said plaintiffs allege was and is null and void."

### "THIRD CAUSE OF ACTION.

[Paragraphs 1, 2 and 3 of this cause of action are the same as the first three paragraphs of the first cause of action as above set out.]

"(4) That since the assignment aforesaid of said instrument the said defendant, the Elk City Gas and Oil Company, in violation of law and of the terms of said instrument, and without any authority whatever, and without the knowledge or consent of said plaintiffs, made and delivered to said defendant, the R. J. Waddell Investment Company, an instrument in writing with the numbers of the land aforesaid and the numbers of other lands written therein, which said instrument in writing so made and delivered to said defendant, the R. J. Waddell Investment Company, was filed for record in the office of register of deeds within and for the said county of Montgomery, and thereafter duly recorded in mortgage record No. 56, at page 97 therein, and pages next following. And while said plaintiffs allege that they do not know the exact nature or full force of said instrument, yet they allege that the same was made, delivered and placed of record to secure the payment of a large sum of money, to wit, the sum of

Ringle v. Quigg.

$12,000; and they also allege that said instrument creates a cloud on the plaintiffs' title to said land, to the detriment and irreparable injury of said plaintiffs and their heirs.

"(5)   That said defendant, the R. J. Waddell Investment Company, claims an estate in said land by virtue of the instrument aforesaid, but said plaintiffs allege that said claim is null and void.

"(6)   Said plaintiffs therefore demand judgment against said defendants and each of them, their assigns, successors, and each of them, that the instrument last aforesaid and the instrument first aforesaid, to wit, said so-called lease, be decreed to be null and void, vacated and set aside and held for naught, and that each and all of said defendants, their assigns and successors, and each of them, be decreed to be foreclosed of all interests in said land.   And said plaintiffs demand judgment for costs."

"Exhibit A" is the lease given above.

*R. H. Nichols, John P. T. Davis,* and *Whitcomb & Hamilton,* for plaintiffs in error.

*S. H. Piper,* for defendants in error.

The opinion of the court was delivered by

GRAVES, J.:  This is a suit to cancel a gas lease on the ground that it is void.  The particular defects which it is alleged vitiate the lease may be summarized as follow:  (1) The lessees were unable when the lease was executed to perform the conditions thereof, having no right to lay pipes to lessors' premises, which they might want to do, at the end of five years; (2) the lessors expected operations to be commenced before the expiration of the five-year limit; (3) the lease is ambiguous; (4 and 5) while the receipt of royalty is of the essence of the contract, the lease imposes no obligation upon the lessees to begin or continue work; (6) the provisions of the lease lack mutuality; (7) the design of lessees and assigns is to hold the land for speculative purposes only.

A general demurrer was filed to each of the several

causes of action, which was sustained. The plaintiffs stood upon their petition, and judgment was entered against them for costs. They bring the case here alleging that the court erred in sustaining the demurrer. This is the sole question presented to this court.

We are unable to attach the importance to these alleged defects which has been given to them by the plaintiffs. We cannot agree with the contention that the lease is so inherently vicious as to be void. In support of their claim the plaintiffs cite the following cases: *National Oil & Pipe Line Co. v. Teel* (Tex. Civ. App.), 67 S. W. 545; *Ray v. Natural Gas Co.*, 138 Pa. St. 576, 20 Atl. 1065, 12 L. R. A. 290, 21 Am. St. Rep. 922; *Glasgow, Appellant, v. Chartiers Oil Co.*, 152 Pa. St. 48, 25 Atl. 232; *Oil Company v. Oil Company*, 47 W. Va. 84, 34 S. E. 923; *Roberts v. Bettman et al.*, 45 W. Va. 143, 30 S. E. 95; *Federal Oil Co. v. Western Oil Co.*, 112 Fed. 373; *Martel v. Jennings-Heywood Oil Syndicate*, 114 La. 351, 38 South. 253.

None of these cases is in point here. No question is decided by any of them which would, if followed, dispose of this case. The instruments involved in the cases cited are in substance quite similar to the lease in question. There is a margin of difference, however, between the facts involved in this case and those cited, sufficient to destroy their applicability to the question here presented. In none of the cases mentioned was suit brought to cancel the instrument involved because it was void, but the object in each case was to determine the rights of the parties thereunder. It will be necessary, therefore, to consider the validity of the lease in controversy upon its own provisions and conditions.

Taking the objections in their order, the first is that it was impossible for the lessee, when the lease was executed, to exercise his option to keep the lease alive by furnishing gas at the end of five years. We do not understand that an option to do something five

years in the future is void merely because the person making the agreement is unable to perform the contract at once.

The second objection is that the lessors expected operations would be commenced immediately and not be delayed during the five-year limit, and that they have been disappointed in these expectations. We do not understand that a written instrument is void merely because one of the parties expects the other to perform the conditions thereof on his part at once, when by the express stipulations of the agreement such performance may be delayed five years.

The third objection is that the lease is ambiguous. While the terms of this instrument are not as clear and specific as usual in such important agreements, yet it is not difficult to ascertain therefrom what the parties intended thereby, and, when this can be done, written contracts should not be set aside as void merely because to some degree ambiguous.

The fourth and fifth objections are apparently regarded as the most important, and are chiefly relied upon. It is claimed that the receipt of royalty is the essence of the contract, and that the stipulations therein do not require the lessees to begin or continue operations; that the lessees are thereby able to defeat the real object of the lease, and that, for this reason, the instrument is void. In the language of the brief of plaintiffs, "it cannot be said that this lease was valid for a single minute, either before or after the assignment thereof." This objection is founded principally upon paragraph four of the lease. It may be conceded that obtaining royalty is the essence of the contract, and also that under these provisions the lessees might continue the lease during its full term of twenty years without doing anything in the way of exploration for gas or oil. These considerations, however, do not make the lease void, nor unreasonable. There are no facts alleged in the petition which indicate that these pro-

visions are in any way injurious to the interests of the lessors.

Whether or not a contract is unconscionable, unreasonable, or improvident, may depend upon something more than its mere language. The subject-matter of the agreement, its condition, surroundings, and the relation of the parties thereto, may become material matters for consideration. The land described in the lease, in the absence of allegations to the contrary, may have been assumed by the district court to be, when the lease was executed, situated remote from oil- or gas-producing territory. When this lease was executed the idea of valuable deposits of gas or oil being under the leased premises may have been regarded as somewhat visionary. The lessors may have been disposed to grant very liberal terms to persons willing to make the necessary expenditures to ascertain whether such deposits existed or not. On the other hand, the lessees may have been willing to undertake such explorations if inducements sufficiently liberal, as to time and otherwise, could be secured. The terms and conditions of such a contract, including the time during which a lease shall continue in force before the commencement of the work of exploration, are proper matters of agreement which the parties have the right to fix to suit themselves. In the absence of fraud, imposition or mistake, neither of which is suggested here, parties should be left to make their own contracts, and, when freely and voluntarily made, should be held to the conditions thereof, even though it should turn out in the light of subsequent developments that their rights were valued too lightly. In the case of *Rose v. Lanyon,* 68 Kan. 126, 74 Pac. 625, Mr. Justice Burch used language which is quite pertinent here. He said:

"Courts have no right to declare that, whatever the parties may think, operations for sinking a well must begin at once under an oil or gas lease. If this court had done so prior to the time plaintiffs desired to contract they would have rebelled, without any doubt,

with the utmost indignation against the decision as an infringement of their liberty to contract with reference to their land and the minerals beneath its surface as they pleased. In so doing they would have been justified. If plaintiffs should desire to contract for an immediate exploration, they must have that right; and if they should desire to give an oil or gas company five years in which to sink a well, upon a consideration satisfactory to themselves, and as the result of negotiations free from imposition and fraud, they must have that right. But having deliberately made a contract of the latter description, they have no right to call upon a court to declare that it is of the other kind merely because generally it might seem to be better for farmers not to encumber their lands with mineral leases giving a long time for exploration, or because generally such leases do contemplate that forfeiture shall follow a failure to explore at once." (Page 134.)

We see no want of mutuality in the terms of the lease. Taken as a whole, it is such a contract as parties may properly make. We do not think the district court erred in sustaining the demurrer, and the judgment is affirmed.

All the Justices concurring.