**(90 South. 167)**

**No. 24925.**

**MILLER v. ODEN (WENK et al., Interveners.)**

(Oct. 31, 1921. Rehearing Denied Nov. 28, 1921.)

*(Syllabus by Editorial Staff.)*

1. **Mines and minerals ⬤⇒57 — Instrument whereby lessee agreed to pay or return lease held to evidence a unilateral contract, a nudum pactum, and void.**

Where an oil and gas lease was delivered to a lessee, who by a contemporaneous instrument agreed to pay the lessor $1,000 or return his lease and abstract within seven days, the instrument evidenced a bald unilateral contract, and was a nudum pactum and void.

2. **Mines and minerals ⬤⇒57—Lessor held entitled to withdraw from optional contract to give lease.**

Where plaintiff sent an oil and gas lease to defendant, who agreed in return that he would pay plaintiff $1,000 or return his lease, with abstract, within seven days, but the payment was not made nor the lease returned within such time, *held* that, in view of Civ. Code, arts. 1883, 1926, requiring a contract to obligate the parties, and providing for damages or specific performance in case of breach, the contract being purely of an optional character, plaintiff had a right to withdraw therefrom at any time prior to an acceptance, and to have the lease annulled and canceled.

Provosty, J., dissenting.

Appeal from Second Judicial District Court. Parish of Webster; Roberts Roberts, Jr., Judge.

Action by Jesse F. Miller against Ray P. Oden, trustee, wherein Herbert Wenk and another intervene. Judgment for plaintiff, and defendant and interveners appeal. Affirmed.

Foster, Looney & Wilkinson, of Shreveport, for appellant interveners.

R. H. Lee, of Minden, for appellee.

LAND, J. The plaintiff has instituted this suit to cancel, annul, and to have declared void and of no effect, a certain oil and gas lease on a tract of land situated in Webster parish. This contract of lease upon its face purports to be an executed contract of date February 12, 1921, and the consideration for same is stated in said contract to be $1,000 cash in hand paid. However, at the time plaintiff delivered said contract of lease to the defendant, he delivered to plaintiff the following instrument, dated February 12, 1921:

"$1,000.00. I agree to send Jesse F. Miller one thousand dollars or return his lease and abstracts within seven days.

        "Ray P. Oden, Trustee."

This instrument is a counter letter, showing the true nature of the agreement between the parties, and consequently evidences the terms of the agreement between them. It is evident, from the terms of said instrument, that the defendant should have seven days from its date, February 12, 1921, to examine the abstract, and that he had the right to return the abstract and lease to plaintiff within that period, whether said abstract was satisfactory or not. He was not compelled, therefore, to pay plaintiff the $1,000 within seven days from the date of the agreement, even if the abstract, upon examination, had shown a good and merchantable title in plaintiff. The payment of said amount, therefore, depended solely upon the will of the defendant, within seven days from February 12, 1921, whether the title was good or bad, and the return of the lease and abstract also depended solely upon his will, whether the title was good or bad. Defendant did not bind himself to pay plaintiff $1,000, if his abstract showed a perfect title in plaintiff, within seven days from the date of this instrument.

[1, 2] The Civil Code provides that "every contract has for its object something which one or both parties oblige themselves to give, or to do or not to do," and that, "on the breach of any obligation to do or not to do,

the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract." Articles 1883, 1926. Hence there can be no contract "to do" unless the party obliges himself to do some particular thing, and as defendant did not engage or oblige himself to do some particular thing, there was no contract between the parties by which he was bound to plaintiff. It follows that the obligation to perform was optional with the defendant, and, as a consequence, that the agreement was terminable at the will of plaintiff.

The instrument evidences a bald, unilateral contract. It is a nudum pactum and void. Martel v. Jennings-Heywood Oil Syndicate, 114 La. 358, 38 South. 253. Plaintiff leased this tract of land to J. P. Evans on April 12, 1921, while negotiations were still pending between plaintiff and defendant as to a lease on same. Plaintiff wrote defendant a letter, dated Minden, La., April 9, 1921, insisting upon defendant closing the deal right away, advising him that he would not hold the lease any longer. Defendant resides in Shreveport, La., and testified that he did not receive plaintiff's letter until April 13th, the day after plaintiff had leased this tract of land to Evans. However, defendant did not answer plaintiff's letter until April 19th, notwithstanding its urgent nature, notifying him that the lease had been accepted, and that a cashier's check for $1,000 had been mailed to the First National Bank of Minden to cover the land leased. While the original period of seven days was extended, and negotiations covered a period of nearly two months, yet there was no definite term fixed for defendant's acceptance of the lease. The agreement between plaintiff and defendant, as witnessed by instrument of date February 12, 1921, being purely of an optional character, plaintiff had the right to withdraw from the same at any time prior to an acceptance by the defendant. This the plaintiff did, and leased his land to a third party. It follows that plaintiff had a legal right to cancel and annul the lease, delivered by him to defendant, in this case, and recorded by defendant in Webster parish, after plaintiff had leased the same property to Evans.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed.

O'NIELL, J., concurs in the result.

PROVOSTY, J. (dissenting). On the 12th of February, 1921, the plaintiff Miller, executed in favor of the defendant, Oden, trustee, an instrument of oil and gas lease, one of the considerations of which was the payment of $1,000 cash. He delivered to Oden this instrument and an abstract of the title to the leased land, taking from him a receipt reading:

"$1,000.00.            2/12/21.
"I agree to send Jesse F. Miller one thousand dollars or return his lease and abstract within seven days.
         "[Signed] Ray P. Oden, Trustee."

Certain defects were found in the title, which Oden required should be cured before he would finally accept; and, before he had accepted, plaintiff, on April 12, 1921, leased the land to other parties. On the 18th day of April, 1921, Oden transmitted the lease to the clerk of court of Webster parish, where the leased land is situated, to be recorded, and at the same time deposited $1,000 to the credit of plaintiff in bank, and notified him of the deposit.

The object of the present suit is to have the said instrument of lease declared void and of no effect, and its recordation in the clerk's office of Webster parish canceled.

Oden was trustee for the interveners, Victor H. and Herbert Wenk, who have made themselves parties to the suit for the purpose of defending it.

Within the seven days' delay allowed by the above transcribed receipt, Oden caused

the title to the land to be examined by counsel, and, defects having been found in it, wrote to plaintiff transmitting the abstracts of title and the report of counsel, and requesting that the defects mentioned in it be cured, and that the abstract of title be returned as soon as possible, when he would be glad to send the $1,000. The date of this letter was February 18, 1921. On February 21st plaintiff handed the abstract to Mr. Robertson, attorney at law, just as the latter was taking the train in Minden to go to Shreveport, for him to straighten out the title. He wanted to know what fee Mr. Robertson would charge for the work, and Mr. Robertson answered that until he had looked over the papers he could not tell what this fee ought to be. Mr. Robertson did not know of the lease, and was not informed that the straightening out of the title was desired in connection with it, and did not understand that the matter was pressing, or, indeed, that he was to do the work until he had an agreement with plaintiff about the fee to be charged by him for it.

On February 28th, plaintiff wrote to Oden, inquiring, "How much time will you give me to get my abstract straight?" And on March 2d Oden answered:

"In reply to your letter of February 28th, Mr. Thos. W. Robertson told me that he had your lease and abstract in his possession and was doing his best to get the title straight. I told Mr. Robertson that he could give me this within the next week or ten days and it would be all right. Kindly get in touch with Mr. Robertson at once and have him get this lease to us without any further possible delay."

On March 6th Mr. Lee, plaintiff's attorney in this case, wrote defendant:

"Mr. Miller received your letter of 4th. We were surprised that Mr. Robertson had not written us what you told him, but are doing all we can to get the abstract back as soon as possible. My abstract could have been easy in a few days, if Mr. Robertson had done as promised."

Plaintiff lived in Webster parish. On March 19th he went with two witnesses to the bank in Shreveport where Oden was, and in the presence of the two witnesses made formal demand on him that he pay the $1,000 or return the lease. Oden answered that he could not pay until title was cleared up, and did not return the lease.

The conversation between the parties on that occasion seems to have consisted in this peremptory demand, or putting in default, and answer. But on March 31st plaintiff wrote Oden:

"Kindly go to T. W. Robertson's office and mail me my abstract, as you have promised to do. I can't get my abstract fixed up and it over there. Let me hear from you by return of mail."

To that letter Oden answered:

"In reply to your letter of March 31st, this is to advise you that I just took up the matter with Mr. Thos. W. Robertson, and he advises me that he is doing all in his power to get the titles complete, so he can turn same over to me.

"Just as soon as he does, I will be glad to mail you check for your money.

"Assuring you that I want the lease and am doing all in my power to get same straightened out, I am," etc.

On April 9th plaintiff wrote to Oden:

"I am handing you herewith a certified copy of an affidavit which is necessary in clearing up title to my lands on which you have a lease, and the abstract for examination.

"It appears to me that you have had ample time in which to investigate this matter, and under the circumstances I am behooved to request of you to either return the abstract to me right away or else forward check to cover the amount of the lease.

"I am not disposed to cut you out of the lease without giving you a chance to retain same, if you desire it; however, as the conditions now exist, I do not feel that I should put off the matter of turning the lease any longer."

Oden and one of the interveners testified that the understanding was that the abstract of title was given Oden by plaintiff for him to submit to counsel, and that the agreement

was that plaintiff was to cure any defects found in the title. Plaintiff testified that there was no such agreement, but that the hereinabove transcribed receipt expressed the entire agreement. In view of the hereinabove transcribed correspondence, there can be no difficulty in reaching the conclusion that the agreement was as testified to by Oden and interveners. It may be well to mention, in that connection, that Oden was without pecuniary interest in the matter, acting for the interveners merely as a matter of accommodation.

It is very evident, also, from all the facts, that the delays in the matter are not attributable to Oden, or the interveners, who were anxious to have the lease, but solely to plaintiff, who left the perfecting of the title to Mr. Robertson, without having had any definite understanding with him in the matter.

Learned counsel for plaintiff would have the case to be governed by article 1800 of the Civil Code, which reads:

"Art. 1800. The contract, consisting of a proposition and the consent to it, the agreement is incomplete until the acceptance of the person to whom it is proposed. If he, who proposes, should before that consent is given, change his intention on the subject, the concurrence of the two wills is wanting, and there is no contract."

In my opinion the case is governed by article 1802, reading:

"Art. 1802. He is bound by his proposition, and the signification of his dissent will be of no avail, if the proposition be made in terms, which evince a design to give the other party the right of concluding the contract by his assent; and if that assent be given within such time as the situation of the parties and the nature of the contract shall prove that it was the intention of the proposer to allow."

It is also very evident from the said correspondence that the understanding of the parties was that Oden should have an opportunity to accept the contract after he should have been advised by counsel of the title being good, and that plaintiff was to cure, if possible, any defects that might be found in the title.

Under the terms of said article 1802 the assent to the proposition must "be given within such time as the situation of the parties and the nature of the contract shall prove that it was the intention of the proposer to allow." In this case the receipt hereinabove transcribed shows that the proposer intended to allow seven days. This delay was allowed in order to afford Oden an opportunity to have the title passed on; and, fixing it, the parties did so on the assumption that the abstract, which was turned over to Oden and which he was to submit to counsel, would show the title to be good. The intention, therefore, was that Oden was to have seven days from the time an abstract showing the title to be good should have been furnished him. From the abstract furnished him the title was bad, and the title continued to be bad, until the defects in it were cured by the affidavits transmitted in the letter of April 9th. The evidence shows that Oden did not receive these affidavits until the 13th, and that, as soon as he received them, he and one of the interveners diligently sought to submit same to Mr. Robertson and secure his opinion on same, and that without any loss whatever of time after this opinion had been received the lease was recorded, and the $1,000 transmitted, evidencing acceptance.

I therefore respectfully dissent.