McCALEB, Justice.
 

 The Attorney General brought this suit on behalf of the State of Louisiana to set aside and annul a sale executed by the General Manager of the State Penitentiary on June 22, 1931, under authority of Act No. 279 of 1926, wherein certain public lands situated in the Parish of Iberia known as “Hope Plantation”, together with a ninety-nine year mineral lease, were transferred and conveyed to one of the defendants, J. Paulin Duhe. The grounds upon which the validity of the transfer is assailed are (1) that the General Manager of the Louisiana State Penitentiary, who acted for the State in the transaction, was without authority to execute the deed; (2) alternatively, that the act of sale is void ab initio for lesion beyond moiety; (3) alternatively, that the vendee, Duhe, owes a balance of $74,111.39 on the purchase price; (4) alternatively, that the paid-up mineral lease granted to Duhe for a period of ninety-nine years bearing upon and affecting the land, with reservation to the State of two and a half (2y2%)
 
 *197
 
 per cent royalty on all oil, gas and all other minerals produced and saved from and out of said lands, is void ab initio since it contains a potestative condition and for the further reason that said lease was made in contravention of Section 2 of Article IV of the Constitution of 1921; and (5) alternatively, that the mineral lease should be cancelled because the rights of the lessee thereunder have prescribed by ten years non-user of said lease.
 

 The defendants, J. Paulin Duhe, the State’s vendee, and his successor in title, a corporation named “J. Paulin Duhe, Inc.,” excepted to the petition filed on behalf of the State on the grounds of (1) vagueness and (2) that no right or cause of action was alleged. The exception of vagueness was leveled at the fact that, while the petition failed to charge directly that the officers representing the State in the transaction under attack acted dishonestly or contrary to the interest of the State, the allegations were of such broad and general nature that it was uncertain whether the Attorney General was contending that those officers were guilty of wrongful conduct. In response to this exception, the Attorney General formally stated to the court below that no charge of dishonesty was being directed against anyone connected with the sale and a formal minute entry of this declaration was accordingly made. Thereafter, the district judge, upon hearing argument on the defendants’ exception of no right or cause of action, sustained the exception and dismissed the suit. Wherefore, this appeal.
 

 The pertinent facts of the case, as alleged in the petition and as elaborated upon by the Attorney General in his brief, are as follows:
 

 Hope Plantation was originally acquired by the State of Louisiana under authority of Act No. 70 of 1900, for approximately $129,000 for use as a penal farm. Thereafter, by Act No. 35 of 1910, the Board of Control of the State Penitentiary was authorized to sell, lease or otherwise dispose of Hope and two other plantations upon approval by the Govérnor of the price, terms and conditions of such sale, lease or other disposition, provided that no sale should be made of the properties for a lesser price than the State paid for them. By Act No. 252 of 1914, the Board of Control of the State Penitentiary was required to establish and maintain agricultural and stock-raising operations on Hope and two other plantations, said operations to be conducted on not less than 500 acres of each penal farm dedicated to such use. This act further provided that no portion of the land dedicated should be sold under the authority of Act No. 35 of 1910.
 

 From 1910 until 1925, the Board of Control of the State Penitentiary was unsuccessful in either leasing or selling Hope Plantation. Plowever, on November 3, 1925, H. C. Pitcher, the General Manager of the Louisiana State Penitentiary, with the approval of Honorable Henry L. Fuqua, Governor of the State, leased the plantation to the defendant, J. Paulin Duhe, under a written contract. This lease was made for a period of two years beginning January 1, 1926, and ending January 1, 1 1928, in consideration of a yearly rental of $12,000. Coupled with it was an option
 
 *199
 
 in favor of Duhe to purchase the property at any time before the expiration of the lease for the price of $100,575, with the provision that, in the event the option to purchase was exercised, all rentals paid were to be applied to the purchase price. The option also contained a further proviso that the deed to the plantation would carry with it a ninety-nine year mineral lease of" the usual tenor with a 2t/j.% royalty reserved to the State.
 

 At the Regular Session of the Legislature of 1926, Act No. 279 was passed. This statute authorized the General Manager of the Louisiana State Penitentiary, with the approval and concurrence of the Governor, to sell Hope Plantation for such price and on such terms, conditions and stipulations as he might deem expedient and practicable and that, together with the sale and conveyance of said lands, there he included a paid up mineral lease for a period of ninety-nine years in favor of the purchaser, with a reservation to the State of a 2%% royalty on all oil, gas or other minerals that might be produced and saved out of said lands. By Section 3 of the Act, the Legislature ratified and approved the lease made by the General Manager of the Penitentiary on November 3, 1925, in favor of Duhe.
 

 On December 20, 1927, prior to the expiration date of the first lease, the General Manager of the Louisiana State Penitentiary, acting under the authority of Act No. 35 of 1910, with the approval of Honorable O. H. Simpson, Governor of the State, executed a new lease of Hope Plantation in favor of Duhe for a period of three years beginning January 1, 1928, and ending January 1, 1931. The yearly rental under the new lease was reduced from $12,000 to $6,000 and the rent for the year 1928 was waived in consideration of Duhe making repairs to the buildings approximating $6,000. Lhe State also granted an option in favor of Duhe to purchase Hope Plantation, at any time before the expiration date of the lease, for the sum of $100,-575 with the proviso that all rentals paid under both the first and second leases would be applied on the purchase price. This lease, similar to the first lease, contained a provision for the execution by the State of a ninety-nine year mineral lease of the usual tenor with 2%% royalty reserved to the State.
 

 During the existence of the second lease, the Legislature, by Act No. 86 of 1930, granted to the United States the use and possession of an additional tract of 672 acres carved out of Hope Plantation for the specific purpose of enlarging the demon■stration farm already established thereon. Duhe, the lessee, consented to this grant in favor of the United States and the State agreed on its part that, in the event the balance of Hope Plantation was sold to him, a credit or reduction on the purchase price of $100,575 would be allowed to the extent of $50 per acre for the 672 acres or a total deduction of $33,600.
 

 On June 22, 1931, after the expiration date of the second lease, and Duhe’s option to purchase the lands, R. L. Plimes, General Manager of the Louisiana State Penitentiary, acting under the authority vested in him by Act No. 279 of 1926 and with the approval and consent of Honorable Huey P. Long, Governor of Louisiana,
 
 *201
 
 sold, by authentic act, Hope Plantation to the defendant, Duhe for the price and sum of $100,575, which was the sale price fixed in the option clause in the first and second leases. In this act of sale, the 500 acres originally dedicated as a demonstration farm under Act No. 252 of 1914 and the 672 acres dedicated to the United States by Act No. 86 of 1930 were excluded from the conveyance and the purchase price received by the State was computed as follows :
 

 1. Cash in hand paid, 5 6,463.61
 

 2. Credit for rentals paid by Duhe for the years 1925 to 1930 inclusive, pursuant to the provisions of the second contract of lease of date December 20, 1927, 36,000.00
 

 3. Timber and machinery located on property previously sold in accordance with the second contract of lease, 4,511.39
 

 4. Deduction of value of 672 acres dedicated as demonstration farm as per Act No. 86 of 1930, at $50.00 per acre, 33,600.00
 

 5. Four vendor’s lien notes each for $5,000 due one, two, three and four years after date, 20,000.00
 

 Total, 5100,575.00
 

 The deed further provided that:
 

 “It is stipulated that for the consideration hereinafter set forth, and in pursuance of the provisions of Act 279 of 1926, there is hereby granted, and is included in this sale to vendee herein, as lessee, a paid up mineral lease for a period of ninety nine (99) years, bearing upon and affecting the property hereinabove described in favor of vendee as lessee, his heirs or assigns, with the reservation to the State of Louisiana of a two and one half (2%) per cent royalty, on all oil, gas or other minerals that might be produced and saved from and out of the said lands.”
 

 It is upon the above state of facts that the Attorney General contends that the sale of the land and the mineral lease granted to Duhe are null for the various reasons • which we have detailed above. Preliminary to a discussion of the propositions presented by the Attorney General, it is apt to observe that he does not challenge the constitutionality of Act No. 279 of 1926 under the authority of which the sale and mineral lease was executed.
 

 The first point raised by the Attorney General is that Act No. 279 of 1926 did not confer upon the General Manager of the State Penitentiary the authority to sell Hope Plantation. This contention is predicated upon the theory that the statute merely confirmed and ratified the first lease agreement of November 3, 1925, and did not authorize the General Manager of the State Penitentiary to sell the property, with the approval of the Governor, on such terms and conditions as he might deem expedient and practicable.
 

 An examination of the provisions of Act No. 279 of 1926 is sufficient to, reject the postulation. The Act contains four sections, the first of which empowers the
 
 *203
 
 General Manager of the State Penitentiary, with the approval and consent of the Governor, to sell Hope Plantation. The second section authorizes a sale of the lands “for such price and on such terms, conditions and stipulations as he (the General Manager) may deem expedient and practicable, ' * * * ” and further provides that “together with the sale * * * there be included a paid up mineral lease for a period of ninety-nine (99) years, * * * in favor of the purchaser, * * * with the reservation to the State of Louisiana of a two and a half per cent (2%%) royalty * * * Section 3 ratifies, approves and renders executory “any contract carrying an option to purchase the properties herein defined, * * * The fourth section repeals all laws in conflict with the provisions of the Act.
 

 The language of the Legislature is clear and direct and we experience no difficulty in holding that, under Sections 1 and 2 of the Act, the General Manager of the State Penitentiary, with the approval and consent of the Governor, was vested with express authority to execute the act of sale under attack on such terms and conditions as he deemed advisable.
 

 The first alternative contention of the Attorney General that the sale is void for lesion beyond moiety is not well founded. The facts alleged in the petition do not sustain the argument for nowhere in the petition is there to be found an allegation disclosing the value of the land at the time of the sale. Hence, we cannot say that the price paid was less than one half of its true worth.
 

 Moreover, the sale was confected in strict accordance with the authority delegated to the General Manager of the State Penitentiary by the Legislature (Act No. 279 of 1926) which is the only branch of our government vested with the power of disposing of the property of the State. It is elementary that the “fiscal affairs of the state, the possession, control, administration, and disposition of the property, funds, and revenues of the state, are matters appertaining exclusively to the legislative department”. See Carter v. State, 42 La.Ann. 927, 933, 8 So. 836, 837, 21 Am.St.Rep. 404; also Henderson v. City of Shreveport, 160 La. 360, 107 So. 139. Under our system of government providing for a distribution of powers, the judiciary is vested with no right or authority over such matters directly or indirectly as long as the Legislature in authorizing the disposal of State property does not violate the Constitution of this State or of the United States.
 

 Since, in the case at bar, the Attorney General does not question the constitutionality of Act No. 279 of 1926 and since he concedes that the act of the agent of the State was not tainted with fraud or that he abused the discretion or authority reposed in him by the Legislature, it seems plain that judicial interference would be unwarranted under such circumstances. The Legislature, where unrestrained by constitutional prohibition, has plenary power to convey the property of the State on such terms and conditions as in its wisdom it sees fit to impose and the' remedies provided by the Civil Code for the rescission of sales on account of lesion beyond
 
 *205
 
 moiety (See Article 2589 et seq.) are inapplicable to. such conveyances which are made under authority of an admittedly valid statute.
 

 The next alternative contention of the Attorney General is that the recited consideration of $100,575 contained in the act of sale has not been paid and that there is due to the State a balance of $74,111.39. 1 There is no basis for this proposition forasmuch, as it clearly appears from the certified copy of the act of sale which is attached to the petition that the consideration has been either fully paid or accounted for. The contention' advanced seems to be premised upon the idea that the General Manager was without authority to allow credits on the purchase price for the 672 acres which were not conveyed to Duhe and other credits in the form of rent payments, etc. But, here again, this was a matter within the sound discretion of the General Manager of the State Penitentiary subject to the approval of the Governor and,- since there is no charge that the State agent abused his discretion, the conclusions drawn by, the Attorney General are groundless.
 

 The remaining attacks made by the Attorney General have reference solely to the mineral lease which was included in the sale of Hope Plantation to Duhe. He first challenges the validity of the lease on the ground that it contains a potestative condition and is, therefore, void ab initio since the contract does not require the lessee to explore for oil or other minerals. Articles 2034 and 2035 of the Civil Code and the case of Martel v. Jennings-Heywood Oil Syndicate, 114 La. 351, 38 So. 253, are relied upon to sustain this proposition.
 

 The answer to the contention is twofold: First, in view of what we have stated above the articles of the Civil Code respecting potestative conditions are inapplicable to sales made by the State under legislative authority and, second, the absence in the contract of a stipulation obligating the lessee to explore for minerals does not of itself render the lease null for the reason that the act of sale clearly shows that a serious and valuable primary consideration was paid to the State for the grant.
 

 An examination of the mineral lease considered by the court in Martel v. Jennings-Heywood Oil Syndicate, supra, makes it plain that the decision is not pertinent to the case at bar. There, the lease under attack was granted in consideration of the sum of $1 and contained the further stipulation that the lessee should pay the lessors one cent (1^) for each barrel of oil marketed or sold. The court held that, since there was no serious primary consideration for the granting of the lease and since the consideration of the oil royalty was not supported by an obligation on the part of the lessor to explore the land, the agreement was terminable at the will of the lessors. The act of sale and mineral lease before us contains a serious primary cause — that is, the sum of $100,575, which was the total consideration given for Hope Plantation and the mineral lease. It is impossible to determine how much of that considera
 
 *207
 
 tion was paid for the lease and how much for the land since it is inseparable. However, it is manifest that it is a serious consideration and is sufficient to support the validity of the mineral lease. See Cali v. National Linen Service Corp., 5 Cir., 38 F.2d 35; Saunders v. Busch-Everett Co., 138 La. 1049, 71 So. 153; and Leonard v. Busch-Everett Co., 139 La. 1099, 72 So. 749.
 

 The next claim of the Attorney General is that the mineral lease, being for a period of ninety-nine years, is in effect a sale of the mineral rights of the State and is, therefore, reprobated by Article IV, Section 2, of the Constitution of 1921.
 

 The point is not tenable. The Legislature in authorizing the execution of the mineral lease did not violate the constitutional prohibition unless it be, as suggested by the Attorney General, that the granting of a mineral lease by the State for 99 years is tantamount to a sale of the minerals. But, here again, the constitutionality of the legislative act under which the lease was granted is not questioned. It was obviously necessary for the Attorney General to plead the unconstitutionality of Act No. 279 of 1926 in order to permit consideration of the point raised because Section 2 of Article IV of the Constitution, although it prescribes that “In all cases the mineral rights on any and all property
 
 sold by
 
 the State shall be reserved, * * specifically permits the leasing of the mineral lands of the State.
 

 The final question presented by the Attorney General is that, at all events, the ninety-nine year mineral lease should be cancelled because the defendants have permitted ten years to elapse without making use of their right to explore the land for oil and other minerals. It is said that, since, under the provisions of Act No. 205 of 1938, oil, gas and other mineral leases have been defined and classified to be real rights and incorporeal immovable property, a mineral lease is a servitude and that the provision of Article 789 of the Civil Code respecting the extinguishment of servitudes for non-user of ten years is applicable.
 

 Conceding, merely for the purpose of discussion, that Article 789 of the Code applies to mineral leases as well as to mineral sales or reservations, we do not „ find it necessary to discuss the question presented by the plaintiff for the reason that, since the lease was granted in strict conformity with the provisions of Act No. 279 of 1926, the constitutionality of which is not assailed, it becomes manifest that none of the articles of the Civil Code respecting prescription are pertinent. What we have heretofore said with regard to the irrelevancy of the articles of the Code respecting lesion beyond moiety and potestative conditions applies with equal force to the Attorney General’s argument on the question of prescription. The right and power of the Legislature to dispose of the
 
 property
 
 of
 
 the State by sale,
 
 lease or otherwise is supreme. And, when it has acted, the courts cannot be called upon to interfere in the absence of a plea that the statute is violative of either the State or Federal Constitution.
 

 
 *209
 
 The Legislature had the right to grant the lease and to insert such conditions therein as it felt were necessary for the protection of the State. It could have imposed upon the lessee the duty of exploring the property within any time it believed that development should be begun or it could have provided that the codal articles respecting non-user of servitudes would be applicable. However, it did not elect to do so, but, instead, granted to the defendants an outright lease for ninety-nine years. The right given was not dependent upon the defendants’ use of the property. Should we apply the prescription of ten years in this case, it would be equivalent to inserting a clause in the legislative act and saying that this statute which deals exclusively with a special subject matter is to be controlled by the general laws of the State. This we will not do.
 

 For the reasons assigned, the judgment appealed from is affirmed.