On April 27, 1926, Heber Skinner executed and delivered to the Magnolia Petroleum Company an instrument which reads:
"The State of Texas, County of Andrews
"Know All Men by These Presents:
"That I, Heber Skinner of the State of Oklahoma County of Rogers, hereinafter referred to as `Grantor' for and in consideration of the sum of Twenty-five Thousand ($25,000.00) Dollars cash, in hand paid by Magnolia Petroleum Company, the receipt of which is hereby acknowledged have granted, sold and conveyed, and by these presents do grant, sell and convey unto Magnolia Petroleum Company a corporation organized under and by virtue of the laws of the State of Texas having its principal office at Dallas, Texas, hereinafter called `Grantee' all of the oil, gas, casinghead gas and other minerals whether similar or dissimilar on in and under and that may be produced from the following described tract of land situated in the County of Andrews and State of Texas and more particularly described as follows towit: (Here follows description of land) containing in all more or less 30288 acres together with the right to use so much of the surface as may be necessary and desired by grantee for the egress and ingress, and for the purpose of drilling or mining for producing, storing and transporting such oil, gas, salt water and other minerals; with the right to erect any and all necessary structures for such drilling mining transportations; with the right to erect and maintain telephone and telegraph lines, lay, maintain and operate pipe lines, and with the right to remove any and all property of whatsoever kind or character placed on the premises by grantee.
"It is understood that Magnolia Petroleum Company its successors or assigns, shall never be required to nor shall it ever be under obligation to drill or mine for such oil, gas or other minerals and that any mining or drilling at any time hereafter both before or after production, shall be wholly at the option of grantee. However, in the event oil, gas or other minerals shall be produced from said property in paying quantities then there shall be paid to grantor his heirs executors, administrators or assigns by grantee as a royalty payable monthly as and if production is obtained in lawful money of the United States of America the value of one-eighth (1/8) of all oil gas casinghead gas or other minerals produced and saved from the property at grantee's posted price at the wells or mines; except as to sulphur the royalty therefor shall be fifty (.50) cents per ton for each ton mined and marketed and further except that no royalty shall be payable on gas or casinghead gas unless the same shall be used or sold by grantee off the premises; and further provided that no royalty shall be payable on any oil or gas used by grantee for light *Page 224 
or fuel used for its operations on the property.
"It is further understood that all of said lands are unpatented public school lands, the State of Texas having a lien thereon to secure the purchase money and interest due or hereafter to be due the State of Texas; and in order to secure the grantee in the peaceable and perpetual title, use, ownership and enjoyment of the property and rights herein conveyed, grantor expressly covenants agrees and binds himself his heirs, executors, administrators and assigns to faithfully and punctually as and when the same shall be lawfully due to pay off and fully discharge each and every installment of principal and interest on the indebtedness held by the State of Texas, together with all taxes and assessments of every kind or character of state, county, city, school or other state or governmental agency which may be levied and assessed against said lands, but should grantor his heirs executors, administrators or assigns fail or refuse to pay the principal and each or any installment of interest or principal on the indebtedness held by the State of Texas, as aforesaid as and when the same shall accrue and become lawfully due and payable or fail or refuse to pay any state, county, city, school or other taxes or assessments as aforesaid when the same shall be lawfully due, then in such event, grantee its successors, or assigns are hereby authorized to pay (but are not required to do so) the same or any part thereof and the amount or amounts so paid or advanced by the grantee shall become a charge and lien against and a lien is hereby created and given grantee against the lands property and premises herein described and royalty rights herein named; and the grantor further agrees to pay to grantee interest at the rate of ten per cent (10%) per annum on such advancements from the date of such advancements which as aforesaid, shall become due and payable to the grantee on demand at Dallas, Texas; and in the event of such sums or advancements are not paid to the grantee by grantor within sixty (60) days after demand is made on grantee, the said grantee at its option may without further notice sue and foreclose the lien hereby created and in the event suit is brought ten per cent (10%) on such advancement and accrued interest shall be added thereto and collected as attorney's fees. The demand for payment hereinabove provided shall in any event regardless of the ownership of the land hereafter, be made by grantee addressing such demand by mail to Heber Skinner at Drovers National Bank at Kansas City, Missouri.
"It is hereby agreed that any and all royalty or royalties on oil, gas or other minerals due the State of Texas, by reason of its ownership of such minerals or royalty in Sec. #25, Block A-37, herein described, shall be deducted from and paid from the royalties payable hereunder to grantor, from said Sec. 25, Block A-37.
"It is further understood that the consideration and down cash payment hereinabove recited is adequate with and commensurate with and covers all rights and privileges herein granted and conveyed, conditional or unconditional.
"To have and to hold, the above described oil, gas casinghead gas and other minerals, and all of the rights, privileges, liens and interests in said land herein granted unto Magnolia Petroleum Company its successors and assigns, forever; and the grantor does hereby bind himself, his heirs, executors, administrators and assigns to warrant and defend all and singular said oil, gas, casinghead gas and other minerals, and all rights and privileges, herein granted, unto said Magnolia Petroleum Company, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.
"Witness my hand at Talala, Oklahoma, this 27 day of April, A.D. 1926.
"Heber Skinner."
This suit was filed October 25, 1934, by parties claiming under Skinner against the Magnolia Petroleum Company and others not necessary to mention.
Briefly stated, the suit was for rescission and cancellation of the above instrument and removal thereof as a cloud upon the plaintiffs' title to said lands and minerals therein with an alternative prayer for decree compelling the Magnolia Petroleum Company to explore for and develop the mineral resources of the land under penalty of cancellation of the instrument for refusal so to do.
Section 25, block A-37, was by agreement eliminated from the suit.
The case was tried without a jury and judgment rendered denying the relief sought, from which the plaintiffs appeal. *Page 225 
Upon request of plaintiffs the Court filed findings and conclusions which read:
 "Findings of Fact.
"I. I find that on April 27, 1926, Heber Skinner held fee simple title to and possession of the land described in the mineral conveyance of that date hereinafter set out, subject to unpaid purchase money due the State of Texas, except Section 25, Block A-37, not involved in this cause, concerning which no findings or conclusions are made.
"II. I find that on April 27, 1926, recorded May 7, 1926, Heber Skinner made, executed, and delivered to Magnolia Petroleum Company, a corporation, engaged in the oil business, producing, refining, and marketing crude oil and its products, the following conveyance of the minerals in and under lands in Andrews County, Texas, as follows, to-wit:" (Here follows instrument above quoted.)
"III. I find that prior to October 25, 1934, the date this suit was filed, and subsequent to April 27, 1926, the date of the execution of said mineral conveyance, neither the Magnolia Petroleum Company nor any one for it had drilled for nor produced oil or gas from said tract of land; that defendant Magnolia Petroleum Company has annually and timely paid all taxes assessed against said mineral interest; has maintained geological drilling and production organizations, employees, and equipment over an area covering and including Andrews County; that said Company has neither released, assigned, nor conveyed any right, title or interest in and to said minerals to any other person or corporation, nor has it executed, delivered, or recorded any instrument of writing otherwise quitclaiming or surrendering its title and estate therein conveyed.
"IV. From the testimony offered I find the following facts and circumstances, towit: that at the time of the negotiations for and the execution and delivery of the mineral conveyance by Heber Skinner to Magnolia Petroleum Company the land therein described was located in `wildcat' territory, little, if any, prospecting for oil and gas being or having been theretofore conducted in the area in which said land is located, and said land was located far distant from any known production of oil or gas or other minerals; that subsequent to the execution of said conveyance, during recent years and particularly within the last few months prior to the filing of this suit, exploration for oil and gas within the general area of said land has been carried on, the results of which drilling and prospecting operations material to this inquiry are as follows, to-wit:
"Calvin and Belt #1 Kloh and Rumsey 1320' from the north line and 1320' from the east line of Section 16, Block A-54, P.S.L. Survey, elevation 3233', T.D. 4003', Dry and abandoned; completed 2-14-28; 7 1/4 miles south of the Ralph ranch; Carter and Sweifel et al #1 Cowden, elevation 3176', T.L. 4250', T.D. 5000', located 1320' from the south and east lines of Section 18, Block A-52, P.S.L. Survey; dry and abandoned; completed 1-13-28; 7 1/8 miles southwest of the Ralph ranch; Cosden Oil Co. #1 Cowden 1320' from the south and east lines of Section 8, Block 73, P.S.L. Survey, elevation 3161', T.D. 4116'; dry and abandoned; completed 2-16-28; 7 1/4 miles south of the Ralph ranch;
"Maer, Kell and Martin #1 Meadors, 1320' from the south and west lines of Section 8, Block A-41, P.S.L. Survey, elevation 3288', T.L. 4320', T.D. 4501', Small show oil 440-50'; dry and abandoned; completed 10-11-30; 5 1/5 miles southeast of Ralph ranch;
"Maer and Staniforth #1 Taylor, 1320' from the south and east lines of Section 15, Block A-42, P.S.L. Survey, elevation 3215', T.L. 4130', T.D. 4250'; dry and abandoned; completed 7-8-28; 8 miles southeast of Ralph ranch;
"Penn Oil Company and Humble #1 H. M. Wilson. Center of Section 20, Block A-37, P.S.L. Survey, elevation 3347', T.L. 4175', small show oil 4650'. Show oil 3085' 1/4 bailer sulphur water per hour 4735', increase 4760-4775.' Filled up 1000' sulphur water in 48 hours. T.D. 4775'; dry and abandoned; completed 9-6-30; 640 feet east of Ralph ranch; (Andrews County).
"C. J. Davidson et al #1 H. E. Cummins, 660' from the north and west lines of Section 10, Block 45, Township 1 North, T. P. Survey, elevation 3294'-T.L. 3825' T.D. 4509', lil pay 4296 5302', 4326-4333', shot 7-10-34, 360 quarts 4180-4340' increased gas to estimated six million, spraying oil estimated 10 barrels daily treated 8-14-34, 2000 gallons 50% acid solution, 170 barrel oil load, 925# max.-pressure; initial production 15 barrels spraying 24 hours; 17 miles south of Ralph ranch (Ector County); *Page 226 
"Humble Oil Refining Company #1 Nick Alley (Carswell) 660' from the north and west lines of Section 23, Block A-27, P.S.L. Survey, elevation 3413', T.D. 4835', T.L. 4365', show gas 3055-60', increase 3100-10', small show oil 4150-55', show oil 4675-95', one bailer sulphur per hour 4710-15', two bailers sulphur water per hour 4800-15', hole full sulphur water 4820-35', dry and abandoned; completed 8-9-30; 8 miles north of Ralph ranch; Landreth Production Company #1 Nick Alley 660' from the north and west lines of Section 2, Block A-30, P.S.L. Survey, elevation 3458', T.D. 4801', show gas 4306', 1/2 bailer sulphur water in six hours 4625-35', small show oil 4570-80', sulphur water 4796-4801'; dry and abandoned; completed 815-31; 9 miles northwest of Ralph ranch;
"Louisiana Oil and Refining Company and Cranfill and Reynolds #1, B. B. Ralph 1920' from the south and west lines of Section 7, Block A-28, P.S.L. Survey, elevation 3475', T.D. 4750', small show oil 4351', dry and abandoned; completed 3-20-30; 11 1/2 miles northwest of Ralph Ranch; (Gaines County) Texas Production Company #1 Lockhart, center of SE 1/4 of SW 1/4 of Section 5, Township 22 South, Range 38 East, elevation 3371', T.L. 4097', T.D. 4507', show water and rainbow show oil 4325-30', rainbow show oil 4360', show water 4465' — twenty bailers water per hour 4495-4505'; dry and abandoned; completed 12-12-28; 8 miles north of west of Ralph Ranch; (Lea County, New Mexico).
"I further find that the land involved is prospective oil and gas land; that the expressed intention of the defendant Magnolia Petroleum Company is to drill and develop said land as and when reasonable prudence and good judgment demands; that defendant Magnolia Petroleum Company has expressed no intention, desire, or purpose not to drill or explore said land for oil and gas, nor has said defendant, either by act or word, expressed a purpose, intention, or desire to abandon the mineral estate, rights, and title thereto vested in it under and by virtue of the terms of said mineral conveyance.
"V. I further find that the true consideration is correctly stated in the mineral conveyance of April 27, 1926, to-wit, twenty-five thousand dollars in cash paid and `a royalty payable monthly as and if production is obtained, in lawful money _____ of the value of one-eighth of all oil and gas, casing-head gas or other minerals produced and saved _____; that the immediate and moving consideration for the execution and delivery of said mineral conveyance was the money consideration therein contracted for.
"VI. I further find that subsequent to the execution and delivery of said mineral conveyance to Magnolia Petroleum Company by Heber Skinner, he thereafter quitclaimed, save and except and subject to the rights, titles, and interest therein conveyed to Magnolia Petroleum Company, all his right, title, and interest in and to said land to H. L. Jarboe; that thereafter on August 2, 1926, H. L. Jarboe by deed conveyed to B. B. Ralph the same and all of said right, title, and interest in and to said land by him purchased, with the express clause that `this conveyance is also subject to a conveyance by Heber Skinner, a former owner of said tracts of land, to Magnolia Petroleum Company, a corporation organized under the laws of the State of Texas, conveying to said Magnolia Petroleum Company all of the oil, gas, casinghead gas, and other minerals in or under or which might be produced from said tracts of land, said conveyance being dated April 27, 1926, recorded May 8, 1926, in Book 11, page 628, Deed Records of Andrews County, Texas, the said grantee herein, Benjamin B. Ralph, being entitled to all the rights reserved to the grantor in the conveyance last described which said rights have been duly conveyed to H. L. Jarboe, the grantor herein'; that thereafter B. B. Ralph, grantee of H. L. Jarboe, subsequent to September 11, 1928, and prior to November 14, 1930, made, executed, and delivered to Southland Royalty Company, Arkansas Fuel Oil Company, F. A. Andrews, Sun Oil Company, E. H. Ellison, Fred Turner, Jr., Midland Oil Company, Quapaw Trading Company, and their predecessors in title, certain conveyances and interests referred to as `royalty deeds', therein conveying fractional interests in and to the oil, gas, and other minerals in specified sections of said land and corresponding fractional interests in the `royalty' reserved in the mineral conveyance executed by Heber Skinner to Magnolia Petroleum Company; that the said B. B. Ralph royalty conveyances each included clauses therein in that respect substantially as follows, to-wit:
"Said land being now under an oil and gas mineral deed executed in favor of *Page 227 
Magnolia Petroleum Company, it is understood and agreed that this sale is made subject to the terms of said mineral deed but covers and includes 1/8 of all of the oil royalty, and gas rental or royalty due and to be paid under the terms of said mineral deed, so far as it covers the above described lands only.
"It is understood and agreed that 1/8 of the money rentals which may be paid under the terms of said mineral deed is to be paid to the said grantee and in event that the above described mineral deed for any reason becomes cancelled or forfeited, then and in that event an undivided 1/8 of the lease interest and all future rentals on said land for oil, gas and other mineral privileges shall be owned by said grantee, they owning 1/8 of all oil, gas and other minerals in and under said lands, together with 1/8th interest in all future rents.
"Said land being now under an oil and gas lease executed in favor of Magnolia Petroleum Company, it is understood and agreed that this sale is made subject to any existing valid lease, but covers and includes one eighth of all of the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease so far as it covers the land above described.
"It is understood and agreed that none of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said grantee and in event that the above described lease for any reason becomes cancelled or forfeited, then and in that event an undivided one-eighth of the lease interest and all future rentals on said land for oil, gas and other mineral privileges shall be owned by said grantee, he owning one eighth of all oil, gas and other minerals in and under said lands, together with one eighth of all oil, gas and other minerals in and under said lands, together with one-eighth interest in all future bonus and rents, on the land above described.
"VII. I find that George A. Ralph and Clem T. Keleher, executors of the estate of B. B. Ralph, deceased, George A. Ralph, individually, Martha Bourdon, Sarah Louise Sprague, Elizabeth Duncan, devisees under the will of B. B. Ralph, deceased, have and hold title to and possession of said land and the royalty rights contracted for in the deed from Heber Skinner to Magnolia Petroleum Company in and to the land involved subject to the rights, titles, estate and interest granted to and held by Magnolia Petroleum Company under said Heber Skinner mineral conveyance of April 27, 1926, and the `royalty deeds' and conveyances made and executed by B. B. Ralph to F. A. Andrews, Southland Royalty Company, Midland Oil Company, Quapaw Trading Company, Fred Turner, Jr., E. H. Ellison, Sun Oil Company, Arkansas Fuel Oil Company and their predecessors in title; that the rights, title and interest in and to the minerals, oil and gas within or produced from said land so sold and conveyed to and now held by the said last named persons and corporations are subject to the mineral conveyance made by Heber Skinner to Magnolia Petroleum Company on April 27, 1926.
 "Conclusions of Law.
"I. I conclude that the Heber Skinner mineral deed of April 27, 1926, vested in the grantee, Magnolia Petroleum Company, the indefeasible fee simple title to the oil, gas, and minerals in and under said land therein described subject to and burdened with the obligation as therein expressed to account of Heber Skinner or his heirs or assigns for the value of one-eighth of the oil, gas, or minerals as, if, and when produced; that such estate is in all things valid and is neither upon limitation, express or implied, nor upon condition precedent or subsequent, and that no estate in reversion or upon possibility of reverter remained in the grantor in and to the oil, gas, and mineral estate therein conveyed.
"II. I conclude that the express agreement and covenant contained in said mineral conveyance releasing Magnolia Petroleum Company from `obligations to drill or mine for such oil, gas, or other minerals _____ at any time hereafter, both before or after production _____' is not invalid or void, but, on the contrary, is valid, binding, and enforcible against said grantor and those holding under him.
"III. I conclude further that there may not be implied from the facts or in law an obligation on the part of Magnolia Petroleum Company to commence an exploratory well within a reasonable time after the execution and delivery of said mineral conveyance; that the obligation or covenant to commence an exploratory well and to drill said land at such time as may be directed by the court is in conflict with the express covenant contained in said mineral conveyance and the covenant of warranty therein made. *Page 228 
"IV. I further conclude that the evidence does not show nor are there any facts on which it may be found that there has been a breach of any implied covenant to drill an exploratory well or drill and develop said land for oil and gas and other minerals.
"V. I further conclude that there is neither an express nor implied limitation upon the mineral estate vested in Magnolia Petroleum Company by the terms of said mineral conveyance, limiting said estate to reasonable time within which the grantee, Magnolia Petroleum Company, should be allowed to explore for and develop the oil, gas, or other minerals in and under said land, upon the happening of which said event the estate might terminate.
"VI. I conclude further that there has not been abandonment, either in fact or law, of the estates, rights, title, and interests in and to the minerals granted unto Magnolia Petroleum Company ending or terminating the said mineral estate therein conveyed.
"VII. I conclude further that title to the `royalty rights' in and to the oil, gas, and other minerals contracted for by Heber Skinner in the mineral conveyance of April 27, 1926, passed by virtue of the quitclaim deed to H. L. Jarboe herein referred to, though not expressly mentioned herein, and that said rights, title, and interests thereafter passed to B. B. Ralph and the plaintiffs herein and their grantees: viz: Southland Royalty Company, Arkansas Fuel Oil Company, F. A. Andrews, Sun Oil Company, E. H. Ellison, Fred Turner, Jr., Midland Oil Company, and Quapaw Trading Company.
"VIII. I conclude that no cause of action is made to appear for cancellation of said mineral conveyance from Heber Skinner to Magnolia Petroleum Company or for decree of this court requiring the defendant Magnolia Petroleum Company to drill an exploratory well or to now drill and develop said land for oil and gas and other minerals; that the rights, titles and interests of the various parties in and to the oil, gas, and mineral estate should be adjudicated and settled as set forth in the judgment herein entered on July 27, 1935."