## T. M. STODDARD v. L. EMERY, JR.

### ERROR TO THE COURT OF COMMON PLEAS OF McKEAN COUNTY.

Argued May 9, 1889—Decided October 7, 1889.

1. When a parol agreement changing or adding to a previously executed contract under seal, in this instance an oil-lease, is subsequently made, the whole becomes parol, and the remedy for a breach is assumpsit, and not covenant: Vicary v. Moore, 2 W. 451.
2. If the parties to a demise of lands for oil and gas purposes have provided therein, by express terms, how many wells shall be put down, no implication can be raised that any greater number are to be drilled in accordance with a custom for the most effective operations.
3. Where the reversion of lands demised for oil and gas purposes has been sold by the lessor, no action will lie in the name of the lessor, for the use of his vendee, for a breach of covenants by the lessee, where no breach had occurred before the sale of the reversion.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 301 January Term 1889, Sup. Ct.; court below, No. 235 February Term 1882, C. P.

On January 18, 1882, an action in case was brought by Heman Janes against L. Emery, Jr. The defendant pleaded not guilty. On December 9, 1886, on leave given, the plaintiff changed the form of action from case to covenant, and subsequently, also by leave of court, the record was amended by

naming as the plaintiff Truman M. Stoddard, for the use of Heman Janes. An amended narr was then filed declaring upon the breach of covenants in an oil lease, in that the defendant, the lessee, had unreasonably delayed the sinking of a second well and had not drilled other and sufficient wells to withdraw the oil from the land. To this narr the defendant pleaded non est factum.

At the trial on June 20, 1888, it was shown that on April 26, 1876, Truman M. Stoddard, owning about 30 acres of improved land in Bradford township, executed a lease of the same for oil purposes to L. Emery, Jr., who owned land adjoining that of the lessor, upon a royalty of a one eighth part of the production. The lease contained the following covenant:

" The party of the second part covenants to commence operations for said mining purposes within ten days from the execution of this lease, or thereafter pay to the party of the first part ———— dollars per annum until work is commenced, and to complete a well within four months from this date, and if not finished at the time specified to pay to the first party the sum of fifty cents a day until the well is finished for each day of delay after the expiration of the four months, and if a well is not completed within eight months, then this lease to be void and end. A second well to be drilled upon the farm if the first well is large enough to justify it."

The first well was put down by the lessee, or under his direction, within the time fixed by the foregoing covenant. On January 7, 1878, Stoddard and wife sold the land and their interest in the production under said lease, to Heman Janes, to whom a conveyance was made and possession given on April 1, 1878. The second well was put down on the premises in 1881. Both wells were producers.

L. Emery, Jr., was called by the plaintiff, and examined as on cross-examination. Heman Janes, the use plaintiff, was then recalled and the following offer was made:

The defendant having testified that the second well provided for in the lease was not drilled for some five years after the lease was made and the first well drilled and oil in paying quantities found, and the jury having the right to find that the delay was unreasonable and the covenant thereby broken, plaintiff's counsel now offers to prove by the witness on the stand, and

others, the custom in the business as to the time when the second well should have been drilled; to be followed by evidence that wells were drilled on contiguous land by defendant and others, and that the effect of this was to withdraw the oil from the plaintiff's land, and he thereby lost his share of the same by the omission of the defendant to perform the covenant.

Objected to as incompetent.

By the court: We shall hold that you are confined to showing that there was an unreasonable delay in not putting down the second well, between the date of the lease and the 7th of January, 1878. The plaintiff alleges there was an unreasonable delay in putting down the second well. The plaintiff is Mr. Stoddard, and if there is a recovery at all, it is upon his rights; and unless you have the authority to show to the contrary, we shall hold that you must show that it was an unreasonable delay on the part of the defendant, not to put down the second well before the 7th of January, 1878. It seems to me that Mr. Stoddard can recover for the damages that he sustained, and probably Mr. Janes; that can be determined hereafter. But the recovery is the recovery of Mr. Stoddard. I cannot see how damages that accrued to Mr. Stoddard under this lease, up to the time he parted with his title, and damages that may have accrued to Mr. Janes afterwards, as one cause of action, can be brought together in one case. The recovery in law is Mr. Stoddard's. If it belongs to Mr. Janes, of course it goes to his use. Now, the question is how Mr. Stoddard can recover after he parted with his title and ceased to have an interest in this. We are inclined to hold that Stoddard can recover what damages he sustained.

The objection is sustained so far as to exclude evidence of any breach of the covenant of the defendant, after January 7, 1878, when it appears from the plaintiff's evidence that he parted with his title. Objection overruled as to what took place before that date; exception.[2]

Plaintiff's counsel then offered to prove by the witness on the stand, and others who were experts in the business of drilling for and producing oil in this field, that there should have been drilled on this lease, at intervals of time of not more than four months apart, on the outer lines of the lot, a well to each five acres of the land, so that the lessor could have had the income

comtemplated by the contract, and in order to comply with the usages of the business, and draw out the oil for the use of the lessor for his share, and to save it from being taken out through wells drilled on contiguous land; this obligation being on the lessee by reason of the implied covenants in the lease to operate the farm in the usual manner.

Objected to: 1. By the express covenants in the lease the defendant is only required to drill two wells. 2. The whole offer is incompetent and irrelevant.

By the court: Objection sustained and evidence excluded; exception.[3]

At the close of the evidence, the court, MORRISON, J., charged the jury as follows:

This is an action of covenant brought by Truman Stoddard, for the use of Heman Janes, against Lewis Emery, Jr. It is brought upon an alleged breach of the covenants contained in a lease dated April 26, 1876, between Truman Stoddard and Lewis Emery, Jr., the defendant.

This lease, containing what are denominated express covenants, bound Mr. Emery to put down one well within a certain time, and if that was a paying well he should put down another well. Those are the covenants of the lease, on his part. No time was fixed when he should put down the second well. It is in evidence by the plaintiff's own showing that he put down the first well in accordance with the covenant, and it is in evidence that he put down the second well, perhaps in 1881. It is also in evidence, by the plaintiff's own showing, that the plaintiff, Stoddard, parted with his title to the premises on January 7, 1878.

The plaintiff in this case has sought to recover damages sustained on the alleged breach of a parol covenant that was said to have been made at the same time, and we have permitted him to show, if he could, that there was a parol agreement made when the lease was executed, which was left out, as he alleges, by mistake or fraud. But we don't understand that he insists upon that in his showing now. [He has sworn one witness on the question, but has not made out any covenant, we think, under the law, which was left out of the lease, sufficient to recover upon it, and if he has, under our view of the

law, he has shown no damage to Mr. Stoddard, the legal plaintiff, up to the time he parted with his title, on January 7, 1878. And, as we understand the law, the damages sustained after that, if there was any sustained, cannot be recovered in this action. We have so ruled in the case, and we ruled it because that is our understanding of the law. We may be in error, and if we are, the Supreme Court will correct us and the case can be tried hereafter in accordance with their view of it. The record is in such shape that if the plaintiff has been wronged by this ruling he can remedy it. But it leaves nothing for the jury to do but to bring in a verdict for the defendant, there being no evidence, as we understand it, of any damages sustained by Stoddard, by reason of the breach of the covenants of this lease, before he parted with his title to the land.] [4]

The jury returned a verdict for the defendant. A motion for a new trial having been discharged, judgment was entered upon the verdict, when the plaintiff took this writ, assigning as error:

2, 3. The refusal of plaintiff's offers. [2] [3]

4. The part of the charge embraced in [ ] [4]

*Mr. Byron D. Hamlin,* (with him *Messrs W. B. & J. B. Chapman*), for the plaintiff in error:

1. Upon the point that the action was predicated upon an implied covenant arising from the nature of the demise, to be made manifest by the evidence of usage in the business to which it relates, counsel cited: 1 Saund. Pl. & Ev. 853–4; Watson v. O'Hern, 6 W. 362; Lyon v. Miller, 24 Pa. 392; Koch's App., 93 Pa. 434; Penn Iron Co. v. Diller, 113 Pa. 635; Taylor's L. & T., § 689; Billmeyer v. Wagner, 91 Pa. 92; McGrew v. Stone, 53 Pa. 436; Scott v. Hunter, 46 Pa. 192; 3 Pars. on Cont. 179; 2 Sharswood & B., L. C., 90; 1 Add. on Torts, § 321. 2. That an assignee of a reversion may maintain an action for his damages occurring after his purchase, and that there can be but one recovery and that in the name of the owner at the time of the breach, counsel cited: Dailey v. Beck, 4 Clark 58; s. c. Brightly, 107; Fisher v. Lewis, 1 Clark 431; McClure v. Gamble, 27 Pa. 290; Peters

v. Bowman, 98 U. S. 59; Funk v. Voneida, 11 S. & R. 114; Mine Hill etc. R. Co. v. Lippincott, 86 Pa. 468.

*Mr. G. L. Roberts* and *Mr. M. F. Elliott* (with them *Mr. J. W. Lee, Mr. D. H. Jack* and *Mr. F. W. Hastings*), for the defendant in error:

The law will not raise an implied covenant when there is an express one, and the latter may restrain, enlarge or qualify the former if of the same nature: Jackson & G., L. & T., 497, 520; Taylor, L. & T., 6th ed., 195; Christine v. Whitehill, 16 S. & R. 98. If there be an implied covenant, and the assignee seeks to recover upon that, then the action should have been brought in his own name, and against the owner of the property, as all implied covenants run with the land and bind the assignees of both parties: Jackson & G., L. & T., 489; Spencer's Case, 1 Smith L. C. *115. Moreover, had the plaintiff succeeded in proving the parol covenant which he alleged was omitted from the written instrument, he would have established a parol contract on which covenant would not lie: Lehigh Coal & N. Co. v. Harlan, 27 Pa. 429; McManus v. Cassidy, 66 Pa. 260; Phillips Construction Co. v. Seymour, 91 U. S. 646; Ward v. Vance, 93 Pa. 499. Further: Janes could not recover for breaches of covenant made before he had title: Jackson & G. on L. & T. 980; Wallace v. Harmstad, 44 Pa. 492; Henwood v. Cheeseman, 3 S. & R. 499; Springer v. Phillips, 71 Pa. 60; Cross v. U. S., 14 Wall. 479.

OPINION, MR. JUSTICE GREEN:

There was no evidence to sustain the allegation of an omitted parol agreement left out of the written lease by fraud or mistake, and if there had been it is at least very doubtful whether any recovery could be had upon such an agreement or stipulation in an action of covenant. It is perfectly well settled that when a parol agreement changing or adding to a previously executed sealed contract is subsequently made, the whole becomes parol, and the remedy is assumpsit, and not covenant. Vicary v. Moore, 2 W. 451, and a number of cases which have followed it, are examples of this kind.

The proposition that there was an implied covenant to bore wells every four months, or as often as it was customary to

to put down additional wells, in the absence of any express contract is altogether untenable. The parties provided by the express terms of their contract how many wells should be put down, and that provision of the contract determines the question. When the number is expressed, there is no room for any implication that there should be some other number. Had there been nothing said in the contract on the subject, there would of course have arisen an implication that the property should be developed reasonably, and evidence of a custom of reasonable development by boring a given number of wells in a certain space of time, would have been competent and perhaps controlling. But that doctrine has no application in a case where the parties have expressly agreed in the contract how many wells shall be bored.

We agree with the learned court below that there was no breach of the lease prior to the sale of the reversion by Stoddard in January, 1878, and that being so there was no right of action by Stoddard. If there were any breaches after the purchase of Janes, there would be no right of action in Stoddard, and there could be no recovery in an action brought in his name. The second proposition discussed by counsel for plaintiff in error is of no relevancy, because the only kind of breaches for which recovery is there claimed is breaches of implied covenants occurring before the sale. But we have already held there were no such implied covenants, and hence there could be no recovery for an alleged breach of them.

Judgment affirmed.