No. 22,977.

MARY SKINNER, *Appellant, v.* THE AJAX PORTLAND CEMENT
COMPANY, and THE SACHEM OIL COMPANY, INTERPLEADER,
*Appellees.*

SYLLABUS BY THE COURT.

1. OIL AND GAS LEASE—*Action for Cancellation—Contract Not Unilateral
   —Pleadings.* In a petition asking the cancellation of an oil and gas
   lease for want of mutuality or consideration a recital in the lease
   that it was given as a part of the purchase price of the land is not
   overcome by a general allegation that the substantial and real con-
   sideration was the royalty provided for, and is fatal to the claim that
   the contract was unilateral, in the absence of any statement of facts
   inconsistent with or explanatory of such recital.

2. SAME—*Ninety-nine-year Lease Construed—When Drilling Must Be
   Commenced.* Where an oil and gas lease contains an express provision
   that it is entirely optional with the lessee as to when he shall be
   obliged to drill, an agreement that operations shall be begun with
   reasonable diligence cannot be implied, and the lease cannot be can-
   celed by reason of his delay to commence drilling.

3. SAME—*Demurrer to Petition—Sustained.* On appeal from the sus-
   taining of a demurrer to a petition asking the cancellation of an oil
   and gas lease executed to a corporation where nothing was pleaded
   regarding the capacity of the defendant to take or hold such a lease
   there is no occasion to consider any question in that regard.

Appeal from Chautauqua district court; ALLISON T. AYRES,
judge. Opinion filed May 7, 1921. Affirmed.

*Chester Stevens,* of Independence, for the appellant.

*W. H. Sproul,* of Sedan, *W. N. Banks,* and *O. L. O'Brien,*
both of Independence, for the appellees.

The opinion of the court was delivered by

MASON, J.: In 1913 the owner of a tract of land executed to
the Ajax Portland Cement Company an oil and gas lease
thereon for ninety-nine years, providing for the payment of
royalties on any oil or gas produced. Mary Skinner, who after-
wards became the owner of the land, in 1919 brought this ac-
tion against the lessee seeking a cancellation of the lease on the
ground that no wells had been drilled. A demurrer to the peti-
tion was sustained and she appeals.

1. The plaintiff contends that under the allegations of the petition the lease was lacking in mutuality, was unilateral and without substantial consideration. The petition alleges that "the substantial and real consideration of said oil and gas lease was the royalty therein given," and that "only one dollar was paid for said lease which is no consideration and one which will not sustain and keep a lease for 99 years with the option to drill at any time during said term." However, the clause of the lease containing the recital regarding consideration reads:

"In consideration of One Dollar, the receipt of which is hereby acknowledged, and as a part of the purchase price of the lands hereinafter described, the said party of the first part do hereby let and lease unto party of the second part and its successors and assigns for the period of ninety-nine years from this date, with full power and authority to enter upon at any time, and drill and operate thereon for oil and gas, the following tracts of land . . ."

A fair interpretation of this language seems to indicate that the execution of the lease was agreed upon as a part of a contract for the sale of the land by the lessee to the lessor. We regard the petition as containing no allegation of fact inconsistent with the hypothesis that the execution of the lease formed a part of the consideration for the conveyance of the land from the lessor to the lessee. The averments that the substantial and real consideration of the lease was the royalty and that only one dollar was paid for it can hardly be treated as in themselves contradicting or explaining away the statement that it was executed in part payment for the land. We think the recital relating to the purchase price of the land, at least in the absence of some explanation detracting from its apparent force, disposes of the contention concerning want of consideration and mutuality, apart from any question as to whether the plaintiff can be heard to contradict the recital of the lease concerning its consideration and apart from any question as to whether the payment of one dollar was a substantial consideration.

2. The plaintiff also contends that she is entitled to have the property developed within a reasonable time and that the failure of the defendant to commence operations under the lease warrants its cancellation. It is a familiar rule that although an oil and gas lease is silent on the subject the law will

ordinarily imply a condition that operations are to be prosecuted with reasonable diligence and that a well must be drilled within a reasonable time, the failure to comply with which condition may in some circumstances afford ground for cancellation. (*Cole v. Butler*, 103 Kan. 419, 173 Pac. 978; 27 Cyc. 728; 18 R. C. L. 1212.) It is competent for the parties however to make such a contract as they see fit, and if the subject is covered by express stipulation there is no occasion or opportunity to supply agreements by inference. "When a lease provides how and when search for oil or gas shall be made there is no room for implications." (*Mills v. Hartz*, 77 Kan. 218, 223, 94 Pac. 142.) Here the lease contains this clause: "It is entirely optional with the lessee as to when, during the term of this lease, it shall be obliged to drill either for gas or oil." This language is too explicit to require interpretation. It leaves the lessee free to postpone the drilling of a well so long as he shall see fit. The enforceability of such a provision follows from prior decisions of this court upholding contracts for the payment of annual rentals in lieu of prosecuting the development of oil and gas properties. (*Rose v. Lanyon*, 68 Kan. 126, 74 Pac. 625; *Ringle v. Quigg*, 74 Kan. 581, 87 Pac. 724.) In the Rose-Lanyon case it was said:

"The courts have no right to declare that, whatever the parties may think, operations for sinking a well must begin at once under an oil or gas lease. If this court had done so prior to the time plaintiffs desired to contract they would have rebelled, without any doubt, with the utmost indignation against the decision as an infringement of their liberty to contract with reference to their land and the minerals beneath its surface as they pleased. In so doing they would have been justified. If plaintiffs should desire to contract for an immediate exploration, they must have that right; and if they should desire to give an oil or gas company five years in which to sink a well, upon a consideration satisfactory to themselves, and as the result of negotiations free from imposition and fraud, they must have that right. But having deliberately made a contract of the latter description, they have no right to call upon a court to declare that it is of the other kind merely because generally it might seem to be better for farmers not to encumber their lands with mineral leases giving a long time for exploration, or because generally such leases do contemplate that forfeiture shall follow a failure to explore at once." (p. 134.)

The allegation in the petition of the failure to drill is followed by the statement that "by the conduct of the defendant

there has been a total and complete abandonment of said oil and gas lease." As no other fact is stated in this connection the use of the term "abandonment" does not change the issue presented.

3. The suggestion is made that there is nothing in the record to show that the defendant (a corporation) has legal capacity to take, own, operate or dispose of oil and gas leases; that its name does not indicate that business to be within the field of its operation; and that the presumption is that its charter does not extend beyond fifty years, while the lease is for ninety-nine. Inasmuch as the petition does not refer to a want of capacity on the part of the defendant there is no occasion to consider any question in that respect.

The judgment is affirmed.