FLEWELLEN et al. v. SIMMS OIL
CO. et al.

No. 3880.

Court of Civil Appeals of Texas. El Paso.

Nov. 23, 1939.

Rehearing Denied Dec. 14, 1939.

688

D. R. Bullard, of Houston, and Saye & Saye, of Longview, for appellants.

Y. P. Broome, of Tulsa, Okl., W. H. Sanford and Conan Cantwell, Thompson, Knight, Baker, Harris & Wright, and Turner, Rodgers, Winn & Sellers, all of Dallas, and Clay Tallman and Donald Campbell, both of Tulsa, Okl., for appellees.

PRICE, Chief Justice.

This is an action instituted by plaintiffs to recover damages in the sum of $500,000 against defendants (appellees) Simms Oil Company, Tide Water Associated Oil Company, and Stanolind Oil and Gas Company, for the alleged breach of an implied covenant to develop for oil and gas an area held under an oil and gas lease upon which the said defendants, as to 374 acres involved, were bound to the same covenants and obligations as the original lessee. The plaintiffs alleged that they were the owners of fractional interests in the one-eighth royalty interest reserved in said lease. Fidelity Oil and Royalty Company and W. L. Goldston were joined as defendants as owners of the other portion of said one-eighth royalty interest. Said Fidelity Oil and Royalty Company and W. L. Goldston (here appellants) filed an answer consisting of a cross action against the other three defendants, seeking damages in the sum of $150,000 based on the royalty interest held by them and made substantially the same allegations as made by plaintiffs. The appellees each interposed a general exception to the petition of plaintiffs and to the cross action of the other two defendants. These general exceptions were each sustained, and plaintiffs and cross-plaintiffs declining to amend, the court dismissed their action. Plaintiffs and cross-plaintiffs duly perfected their appeal, and the case is here for review.

In our consideration and treatment of the question involved it might tend to clarify matters if two well-settled and elementary legal principles are at all times borne in mind: (1) A general demurrer admits all of the pertinent facts well pleaded by the plaintiffs; (2) mere conclusions and facts at variance with the exhibit attached evidencing the contract upon which the legal duty is sought to be founded are not to be considered in determining the sufficiency of the petition. Malone v. El Paso County Water Improvement District No. 1, Tex.Civ.App., 20 S. W.2d 815; Reeves v. Pecos County Water Improvement District No. 1, Tex.Civ.App., 293 S.W. 923; Cowden v. Broderick & Calvert, 131 Tex. 434, 114 S.W.2d 1166, 117 A.L.R. 61. This additional proposition might also be stated: That, challenged by a general demurrer, the allegations of plaintiffs are to be given a liberal construction.

The sole question involved is the sufficiency of the pleadings. Hence it is necessary to set forth literally the vital and controlling allegations of plaintiffs' petition. A large portion of same may be summarized by stating that by pertinent and sufficient allegations it set forth the interest of appellants in the royalty interest reserved in the lease, and that the appellees were bound by the stipulations contained in the lease. Paragraphs ten to thirteen, inclusive, were as follows:

"X. In the year 1930 the East Texas Oil Field was discovered. Rapid development soon proved that it was a large oil pool, approximately fifty miles in length north and south and from five to twelve miles wide east and west and was one reservoir. As early as April, 1931, it was definitely proven that the 374 acres above mentioned, and being the subject of this law suit, or at least a part thereof, would produce oil in paying quantities, and on June 3rd, 1931, a well was brought in on the north 200 acres of the 987 acre tract hereinabove described, with a producing capacity in excess of 10,000 barrels of oil per day, and with a saturated sand thickness in excess of thirty-five feet. In the meantime a large number of wells had been brought in on the structure several miles south of the above mentioned well, which definitely proved that the 374 acre lease in question would produce oil in large and paying quantities. Thereupon it became the duty of the defendants, Stanolind Oil & Gas Company and Simms Oil Company, to proceed with the development of said 374 acre tract by continuously drilling the same in a workmanlike manner with reasonable diligence, until the entire tract had been drilled to a sufficient density to recover the greatest amount of recoverable oil imbedded

in the sand beneath the surface area covered by said lease; that a reasonable program of development required the drilling on said tract of at least two wells each month until the tract was drilled to a density of one well to approximately four acres, which would have resulted in 93 wells having been drilled on said property not later than the 1st of March, 1935.

"Notwithstanding the aforesaid facts the defendants, Stanolind Oil & Gas Company and Simms Oil Company, wholly failed and refused to perform the implied conditions of said lease requiring reasonable development thereof after the discovery of oil on said lands, and did not drill a well thereon until October 11th, 1931. Between that time and November 11th, 1933, they completed only twenty-four wells and then abandoned further drilling operations until July, 1934, the next well being brought in on July 6th, 1934, and being styled Well No. 26. From July 6th, 1934, to December 7th, 1935, said defendants drilled thirteen additional wells and thereupon advised the plaintiffs that they considered that the lease was fully developed, but to satisfy the demands of the plaintiffs they would drill two or three more wells on the property, provided no suit was instituted by the plaintiffs to compel additional drilling or to recover damages resulting from the dilatory tactics of the defendants in failing to reasonably develop said premises.

"Thereupon on the 1st day of February, 1936, this action was instituted, seeking damages and an order of this court requiring the defendants to specifically perform the terms and conditions of the lease contract hereinabove mentioned and praying that if they failed to do so within a reasonable time that the lease be cancelled, set aside and held for naught. Following the institution of the suit and between the 1st day of February, 1936, and the 24th day of August, 1937, the defendants drilled fifteen additional wells on said lease, bringing the total number of wells drilled to fifty-two, so that the lease at this time has been drilled to a density of one well to approximately every 7.19 acres. The last well drilled on said premises was completed on August 24th, 1937. No additional wells have been drilled on said lease since that time.

"XI. Plaintiffs allege that said property could have been drilled to a density of a well to every four acres within the time and in the manner hereinabove set forth,

and that such operations would have resulted in large profits to the defendants, and at the same time would have resulted in large quantities of oil being recovered from said premises which by reason of such failure to drill and develop said property will remain imbedded in the sands beneath said tract of land and never be recovered by anyone; that in addition large quantities of oil have been permitted to be drained from said premises through wells on adjoining properties, all of which constitutes a breach of the implied covenants of the aforesaid lease, and has caused the plaintiffs an enormous damage, as is more fully hereinafter set out.

"XII. Plaintiffs further allege that if the defendants had developed said property with reasonable diligence as above set forth that they would have received and been paid in excess of what they have received as royalty provided for in said lease, the sum of $400,000, being ¾ths of the ⅛th royalty provided for in said lease, which these plaintiffs would have received had the defendants drilled and developed said property as they were required to do under the terms of the lease contract hereinabove mentioned over and above what the plaintiffs have been paid; that the breach of said contract on the part of the defendants in failing to drill and develop said property as they were obliged to do and as is hereinabove set forth is the direct and proximate cause of said damages to the plaintiffs.

"XIII. The defendants, Fidelity Oil & Royalty Company and W. L. Goldston, are made parties defendant in order that they may be cited to appear herein so that the rights of all parties may be adjudicated, and complete relief granted by this Honorable Court."

Attached as an exhibit to plaintiffs' said first amended original petition was the lease involved, which, omitting all description, is as follows:

"Agreement made and entered into the 31st day of October, 1919, by and between J. J. Flewellen of Gregg County, Texas, hereinafter called Lessers and Gaines B. Turner, Trustee, hereinafter called lessee.

"Witnesseth: That the lessors for and in consideration of the sum of $1974.00 cash in hand paid by issuing to the said lessors the sum of $1974.00 of the stock of the Virginia Company at its par value, the receipt of which is hereby acknowledged, have granted, bargained, and leased, and

by these presents do grant, bargain, and leased unto the said lessee for the sale and only purpose of mining and drilling for oil, gas and other minerals and of laying of pipe lines, building of tanks, power stations and structures thereon, to produce, save and take care of said products in and under all that certain tract or parcel of land situated in the counties of Upshur and Gregg, State of Texas, * * *.

"It is agreed that this lease shall remain in force for a term of twenty years from this date and as long thereafter as oil and gas or either of them is found and produced from the land by the lessee or his assigns.

"In consideration of the premises, the lessee covenants and agrees to deliver to the credit of lessor, free of cost, in the pipe line to which they may connect their wells the equal one-eighth part of all oil produced and saved from the leased premises. To pay the lessors $250.00 each year in advance, for the gas from each well where gas only is found, while the same is being used off the premises and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the same time by making their own connections with the well at their own risk and expense.

"If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided for shall be paid the lessor only in the proportion which his interest bears to the whole and undivided fee, lessee shall have the right to use, free of cost, gas, oil and water produced on said land for all operations thereon except water from wells of lessors. When requested by lessors, lessee shall bury their pipe line below plow depth. Lessee shall pay for all damages caused by all operations to growing crops on said land. Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing. If the estate of either party hereto is assigned and the privilege of assigning, in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns. Lessors hereby warrant and agree to defend the title to the lands herein described and agree that the lessee shall have the right at any time to redeem for lessors, by payment, any mortgages, taxes or other liens on the above described lands, in the event of default of

payment by lessors, and be subrogated to the rights of the holder thereof.

"It is further agreed that in no event shall the lessee and his assigns be required to exercise his option to develop said premises in less time than twenty years unless a producing oil or gas well is brought in on an ad adjoinin– or adjacent tract of land and that in that event the said lessee shall commence drilling an offset well within six months after such well on the adjoining tract has been brought in or else shall forfeit this lease as a penalty for such non development."

Appellants' appeal is predicated upon this proposition: "There is no express covenant in the lease which attempts to define the extent to which the property shall be drilled or developed after a well is brought in proving its productivity. Therefore, the usual covenant of reasonable development is implied and the trial court committed fundamental error in sustaining the demurrer on that ground." Cited as authorities to support this proposition are: Summers Oil & Gas, Per.Ed., Vol. 2, page 355, § 411; Summers Oil & Gas, Per.Ed., Vol. 2, pages 301–309, § 395; W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27; Thornton Oil & Gas (Willis) pp. 268–9, § 154; Merrill's Covenants Implied in Oil & Gas Leases, § 117, p. 279; Grubb v. McAfee, 109 Tex. 527, 531, 212 S.W. 464; Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 454, 6 S.W.2d 1039, 60 A.L.R. 890; Texas Pacific Coal & Oil Co. v. Barker, 117 Tex. 418, 6 S.W.2d 1031, 60 A.L.R. 936; Gulf Production Co. v. Kishi et al., 129 Tex. 487, 103 S.W.2d 965; Ralph v. Magnolia Petroleum Co., Tex.Civ.App., 95 S.W.2d 222; Cowden v. Broderick & Calvert, 131 Tex. 434, 114 S.W.2d 1166, 117 A.L.R. 61; Rhoads Drilling Co. v. Allred, 123 Tex. 229, 70 S.W.2d 576; Stanolind Oil & Gas Co. v. Barnhill, Tex.Civ.App., 107 S.W.2d 746; Cole Petroleum Co. v. United States Gas & Oil Co., 121 Tex. 59, 41 S.W.2d 414, 86 A.L.R. 719; Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801.

The brief for appellee Stanolind Oil and Gas Company sets forth this proposition: "The subject matter of development of the Flewellen tract of land is controlled by express covenants contained in the lease of October 31, 1919, from Flewellen to Turner, thereby precluding the existence of an implied covenant." As authorities supporting this proposition the appellee

cites: Cowden v. Broderick & Calvert, Tex.Civ.App., 108 S.W.2d 562; Cowden v. Broderick & Calvert, 131 Tex. 434, 114 S.W.2d 1166, 117 A.L.R. 61; Gulf Production Co. v. Kishi, 129 Tex. 487, 103 S.W.2d 965; Gulf Production Co. v. Kishi, Tex.Civ.App., 105 S.W.2d 733; Freeport Sulphur Co. v. American Sulphur Royalty Co. of Texas, 117 Tex. 439, 6 S.W.2d 1039, 60 A.L.R. 890; Becker v. Submarine Oil Co., 55 Cal.App. 698, 204 P. 245; Stoddard v. Emery, 128 Pa. 436, 18 A. 339; Skinner v. Ajax Portland Cement Co., 109 Kan. 72, 197 P. 875; O'Neil v. Sun Oil Co., 58 Tex. Civ.App. 167, 123 S.W. 172, writ refused; Burt v. Deorsam, Tex.Civ.App., 227 S.W. 354; Greek v. Wylie, 266 Pa. 18, 109 A. 529.

If the facts premised by the appellants' proposition be assumed that: "There is no express covenant in the lease which attempts to define the extent to which the property shall be drilled or developed after a well is brought in proving its productivity," the authorities cited support, or strongly tend to support, the proposition asserted.

We will attempt to state same as a pure proposition of law: Where there is no express covenant in the lease which attempts to define the extent to which the property shall be drilled or developed after a well is brought in proving its productivity, the usual covenant of reasonable diligence to develop is implied. Confining the proposition to the ordinary oil and gas lease, this proposition is fairly established by the decisions of this State. See authorities above noted as cited by appellants.

If we assume the premise of the proposition of appellees that: "The subject matter of the development of the Flewellen tract of land is controlled by express covenants contained in the lease of October 31, 1919, from Flewellen to Turner," the proposition finds strong support in the authorities cited by appellees.

The proposition may be stated as a pure legal proposition thus: "Where an oil and gas lease contains an express covenant as to development, there is no room for an implied covenant." Confined to the ordinary oil and gas lease, we believe this proposition is established by the decisions of this State. See authorities noted above as cited by appellees.

It will be noted that appellants and appellees each cite, in support of their respective propositions, the following cases: Cowden v. Broderick & Calvert, 131 Tex. 434, 114 S.W.2d 1166, 117 A.L.R. 61; Gulf Production Co. v. Kishi, 129 Tex. 487, 103 S.W.2d 965; and Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S.W.2d 1039, 60 A.L.R. 890. Broadly and generally these three cases have this in common: in each there was recognized and vindicated the obligation of the lessee to develop in accordance with the express provision of the lease involved; in each the principle is recognized that the lease being silent as to development, there might of necessity, by implication, be an obligation on the part of the lessee to use reasonable diligence to develop the area under lease. Thus each of the cases under the respective theories held is aptly cited by each party.

In Cowden v. Broderick & Calvert, supra, it was the obligation to develop in accordance with the discretion of the lessee rather than with reasonable diligence that was vindicated by the judgment of the Supreme Court. The opinion draws the distinction between the two classes of development.

Freeport Sulphur Co. v. American Sulphur Royalty Co., supra, held the obligation to be to operate one specific plant. There was, by construction, implied the duty to keep such plant in continuous operation.

Gulf Production Co. v. Kishi, supra, as to the point in question decided that a provision as to the exact number of wells to be drilled in developing governed. It was further held that the express provision as to the number of wells sanctioned only by the provision of forfeiture of the lease, precluded recovery for alleged insufficient development under implied covenants as against the position that the provision related exclusively to development within specified period less than the entire term.

It appears, then, that the question involved in this appeal is the proper construction of the lease in question. The clause or paragraph thereof most specifically involved is the following: "It is further agreed that in no event shall the lessee and his assigns be required to exercise his option to develop said premises in less time than twenty years unless a producing oil or gas well is brought in on an adjoinin— or adjacent tract of land and that in that event the said lessee shall

commence drilling of an offset well within six months after such well on the adjoining tract has been brought in or else shall forfeit this lease as a penalty for such non development."

In a correct construction of this clause several factors are to be considered: (1) It must be construed in the light thrown thereon by all other provisions of the lease; (2) the facts and circumstances surrounding the parties at the time of the making thereof and the purpose the parties thereto had in mind. The subsequent acts and conducts of the parties under the lease may be taken into consideration if necessary to determine their intention at the time of making the lease. These facts have been set forth in plaintiffs' pleading as quoted, and a copy of the vital provisions of the lease have likewise been set forth, and to rehash them here would be mere tautology.

It may be safely asserted that each party to the lease had in mind his ultimate profit. This we take to be true, although lessee might not have intended to actually drill for oil personally, or the lessor to retain his royalty interest. So long as there was no apparent probability of the existence of oil under the lease in question the $1,974 cash consideration provided in the lease was probably an adequate consideration for the right of the lessee to defer or omit exploration and development for twenty years. It is perhaps immaterial whether the same was the sole consideration or an adequate consideration for this privilege of the lessee. In the event of the probable productivity of the land demonstrated by a producing well on adjoining or adjacent land, a new condition arose with which the lease dealt. In such event, the lessee must drill an offset well or forfeit his rights under the lease.

It is unnecessary to here determine or discuss whether this provision was a conditional limitation, special limitation, condition subsequent, or a mere covenant. No termination of the lease by reason of failure to drill this offset well or any other offset well is claimed. As we construe the pleadings, no damages are sought by reason of failure of appellees to drill offset wells, and no such failure is averred. A sort of conditional forfeiture is sought to enforce specific performance of the alleged implied covenant to develop with reasonable diligence.

The lease, it will be observed, makes exploration entirely optional with the lessee until at least a producing well is drilled on adjoining land. When this condition arose the area in question, or at least a portion thereof, became in a sense proven territory, then there accrued a sort of an unearned increment to both the lessor and lessee. It is true that lessee might exercise the option to forfeit the lease by failure to act; but if he did elect to act, he was not making a large investment to explore "wildcat" territory. This well—call it an offset well—is, nevertheless, in the nature of a discovery well. If oil in a substantial quantity was produced the area under lease, or a portion thereof, thereby became proven land.

When this well on adjoining land came in as a producer, the lessee received his quid pro quo for his cash payment, that is, that in order to hold the land he has not been compelled to drill a well on territory which was at least doubtful. Lessee then elects to drill the offset or discovery well to preserve his estate and obtains a producing well. The question posed by this appeal is what legal obligations, if any, are imposed on the lessee in this situation as to further development of the area involved here. Unless it could be said that a fair construction of the specific portion of the lease under consideration was to give the lessee the option of storing the oil in question in the ground to be produced at his election, common sense and common prudence would dictate the development of the lease with reasonable diligence. The drilling of offset wells, of course, is a development to an extent. We think the drilling of offset wells rather than an offset well is fairly implied from the terms of the lease.

If we adopt the construction contended for by appellees the lessor would have a potentially valuable interest in a mineral estate, but a very small voice in the disposition thereof. It seems to us, though we have not seen it so expressed, that in a sense the lessee is a sort of trustee for the lessor. What we mean is that the relationship is somewhat analogous. The lessor must depend entirely on the lessee for the profitable working of his retained interest. This, we think, is the basis for construction of the principle that an oil lease is construed strictly as to the lessee and in favor of the lessor. 31 Tex.Jur. 613; Stephenson et al. v. Calliham, Tex.Civ.App., 289 S.W. 158.

It is true there is the inherent right to contract unwisely and improvidently so long as the agreement stays within the limits of the law. Freeport Sulphur Co. v. American Sulphur Royalty Co., supra. Covenants are implied in oil and gas leases only through necessity. Further, if the matter sought to be implied is dealt with by an express provision, an implied covenant is precluded. A covenant is implied only when it is necessary to effectuate the intention of the parties to the lease. There must be a basis for the implication in the lease itself. See Freeport Sulphur Co. v. American Sulphur Royalty Co., supra, and Gulf Production Co. v. Kishi, supra. On the other hand, a contract should not be construed so that it would be foolish, improvident and one-sided, unless its written terms preclude any other construction. Munger v. Waggoner, Tex.Civ.App., 260 S.W. 696, writ refused; Tennant v. Matthews et al., Tex. Civ.App., 19 S.W.2d 1115, 1116. In the course of the opinion for the Court of Civil Appeals in the case last cited Chief Justice Hickman uses this language: "That construction should never be adopted which leads to an unreasonable result, if the language implied is at all susceptible of a construction making the provision reasonable. For parties to a contract are presumed to intend the reasonable rather than the unreasonable."

When it is necessary to effectuate the intention of the parties manifest by the contract a covenant may be implied. Grubb v. McAfee, 109 Tex. 527, 531, 212 S.W. 464; W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27; Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S.W. 2d 1039, 60 A.L.R. 890. The Waggoner Estate case announces this proposition [118 Tex. 509, 19 S.W.2d 30]: "A court should never override by implication the intention of parties expressed in a binding writing." However, we believe a careful reading of the case will demonstrate that, in a proper case, a court is warranted in implying a covenant necessary to effectuate the intention of the parties.

In the first part of the last clause of the lease heretofore copied the word "develop" is used. This provision did away with the necessity of any drilling so long as the area was purely "wildcat." The word "develop" as there used, we think, includes exploration. An exploration is one of the initial steps in development. What significance has the last word of the clause, "non-development?" Suppose the words "for such non-development" had been omitted, the provision for forfeiture would not have been impaired. We believe the only real effect of the words "for such non-development" was to describe the well as constituting a part of development. The well, without being so described, was in reality also a discovery well. It, when drilled, would develop beyond any question whether oil existed on a portion of the area covered by the lease.

After the successful drilling of the first well it will be noted that appellees did proceed with the development of the lease. This development, it may be fairly inferred, involved the expenditure of vast sums of money. It might be contended that this development was in pursuance of the option given under the lease and is not to be considered as throwing any light upon what the parties intended at the time of the making of the lease. There is in substance this allegation in plaintiffs' amended petition, that between October 11, 1931 and September 11, 1933, appellees completed twenty-four wells, and that from July 6, 1934 to December 7, 1934, they drilled thirteen additional wells, and then advised the plaintiffs that they considered that the lease was fully developed, but to satisfy the demands of the plaintiffs they would drill two or three more wells on the property, provided no suit was instituted by plaintiffs to compel additional drilling; that on the 1st day of February, 1936, this action was instituted demanding further development and for damages for non-development; that between the 1st day of February, 1936 and the 24th day of August, 1937, the defendants drilled fifteen additional wells on the lease. These allegations, taken as true, as we here must, if they are pertinent to the construction of the lease, tend, unexplained, to show a construction placed thereon by the parties.

We believe that the provisions of the lease do not preclude the implication of obligation on the part of the lessees to develop the lease with reasonable diligence. It is our further belief that the lease, construed as a whole in the light of the surrounding facts and circumstances, warrants the implication of such implied covenant. Further, that, challenged alone by general demurrer, the allegations of plaintiffs' petition as to damages are sufficient to support a recovery.

There has been furnished since the drafting of this opinion a copy of the opinion of Judge Brown, in the case of Powell v. Danciger Oil & Refining Co., Tex.Civ.App., 134 S.W.2d 493, which we believe generally supports the ideas advanced herein.

It follows that we deem the action of the trial court in sustaining the general exceptions erroneous.

It is ordered that the cause be reversed and remanded.