SIMMS OIL COMPANY ET AL V. T. J. FLEWELLEN ET AL.

No. 7703. Decided November 12, 1941.
Rehearing overruled December 10, 1941.
(156 S. W., 2d Series, 521.)

*Turner, Rodgers & Winn, W. H. Sanford, Conan Cantwell* and *Thompson, Knight, Baker, Harris & Wright,* all of Dallas, and *Donald Campbell* and *Y. P. Broome,* of Tulsa, Okla., for plaintiffs in error.

The subject matter of the development of plaintiff's tract of land is controlled by the express covenants contained in the lease from their ancestor to the trustee and therefore the existence of any implied covenant is precluded. Cowden v. Broderick & Calvert, 131 Texas 434, 114 S. W. (2d) 1166; O'Neil v. Sun Oil Co., 123 S. W. 172; Freeport Sulphur Co. v. American Sulphur Co., 117 Texas 439, 6 S. W. (2d) 1039.

*D. R. Bullard,* of Houston, and *Saye & Saye,* of Longview, for defendants in error.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

This is an action for damages, alleged to have been suffered by the defendants in error, T. J. Flewellen and others on account of the breach, by the Simms Oil Company and others, of an implied covenant contained in an oil lease to develop the leased premises, with reasonable diligence, after the discovery of oil on said tract of land. The suit was instituted in February, 1936, and came on for trial in November, 1938, and on the 4th day of that month the trial court sustained a general exception to the plaintiffs' petition, and, the latter refusing to amend, judgment was rendered dismissing the suit. The defendants in error appealed from this judgment and the Court of Civil Appeals reversed the judgment and remanded the cause. 134 S. W. (2d) 687.

Disregarding typographical errors the lease instrument which is involved in the controversy reads as follows:

"Agreement made and entered into the 31st day of October, 1919, by and between J. J. Flewellen of Gregg County, Texas, hereinafter called lessors and Gaines B. Turner, Trustee, hereinafter called lessee.

"WITNESSETH: That the lessors for and in consideration of the sum of $1974.00 cash in hand paid by issuing to the said lessors the sum of $1974.00 of the stock of the Virginia Company at its par value, the receipt of which is hereby acknowledged,

have granted, bargained, and leased, and by these presents do grant, bargain, and lease unto the said lessee for the sole and only purpose of mining and drilling for oil, gas and other minerals and of laying of pipe lines, building of tanks, power stations and structures thereon, to produce, save and take care of said products in and under all that certain tract or parcel of land situated in the counties of Upshur and Gregg, State of Texas, * * * * * * *.

"* * * * * * *

"It is agreed that this lease shall remain in force for a term of twenty years from this date and as long thereafter as oil and gas or either of them is found and produced from the land by the lessee or his assigns.

"In consideration of the premises, the lessee covenants and agrees to deliver to the credit of lessor, free of cost, in the pipe line to which they may connect their wells the equal one-eighth part of all oil produced and saved from the leased premises. To pay the lessors $250.00 each year, in advance, for the gas from each well where gas only is found, while the same is being used off the premises and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the same time by making their own connections with the well at their own risk and expense.

"If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided for shall be paid the lessor only in the proportion which his interest bears to the whole and undivided fee, lessee shall have the right to use, free of cost, gas, oil and water produced on said land for all operations thereon except water from wells of lessors. When requested by lessors, lessee shall bury their pipe line below below plow depth. Lessee shall pay for all damages caused by all operations to growing crops on said land. Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and removing casing. If the estate of either party hereto is assigned and the privilege of assigning, in whole or in part is expressly allowed—the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, lessors hereby warrant and agree to defend the title to the lands herein described and agree that the lessee shall have the right at any time to

redeem from lessors, by payment, any mortgages, taxes or other liens on the above described lands, in the event of default of payment by lessors, and be subrogated to the rights of the holder thereof.

"It is further agreed that in no event shall the lessee and his assigns be required to exercise his option to develop said premises in less time than twenty years unless a producing oil or gas well is brought in on an adjoining or adjacent tract of land and that in that event the said lessee shall commence drilling of an offset well within six months after such well on the adjoining tract has been brought in or else shall forfeit this lease as a penalty for such non development.

"Witness our signatures, this the 31st day of October, 1939.
"J. J. Flewellen."

Counsel for the defendants in error assert, in effect, that the sole question for us to decide, in order to reach a conclusion in this case, is whether or not the lease instrument, hereinbefore set out "contains an implied covenant that after the discovery of oil on the leased premises in paying quantities, the lessee is required to develop the lands with reasonable diligence." The assertion is accepted by us, as being correct, and we shall proceed, therefore, to examine the lease instrument for the purpose of deciding the question stated.

A thorough examination of the lease instrument convinces us that the crucial provisions of the instrument are contained in the concluding paragraph thereof. For convenience of reference, we set out below the said concluding paragraph, in which we have interpolated numbers to identify the various clauses contained therein, to-wit:

(Clause 1). "It is further agreed that in no event shall the lessee and his assigns be required to exercise his option to develop said premises in less time than twenty years, (clause 2), unless a producing oil or gas well is brought in on an adjoining or adjacent tract of land, (clause 3) and that in that event the said lessee shall commence drilling of an offset well within six months after such well on the adjoining tract has been brought in, (clause 4) or else shall forfeit this lease as a penalty for such non-development."

Regardless of whether this paragraph be viewed in its own light alone, or is viewed in the light of the lease instrument as

a whole, the language used in the paragraph is of such definite import, in respect to developing the leased premises, as to leave no doubt as to the purpose of the contracting parties in this respect. It is perfectly clear that, subject to the happening of the contingency specified in clause 2, the provisions of clause 1 had effect to exempt lessee, for twenty years, from any obligation to develop the leased premises. The happening of the contingency was meant to have no other effect on the exemption prescribed in clause 1 than to exclude therefrom such development as results from the drilling of offset wells. This is definitely disclosed by the language of clauses 3 and 4, which provides for the lessee "to commence an offset well within six months after such well on the adjoining tract is brought in" or endure the penalty prescribed in clause 4, "for such non-development."

We conclude that the contracting parties themselves provided, in effect, that for twenty years the lessee and his assigns should not be required to develop the leased premises except as development incidentally resulted from the drilling of offset wells. This being the case, the trial court did not err in sustaining the general demurrer as it did and in dismissing the suit.

The judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.

Opinion adopted by the Supreme Court November 12, 1941.

Rehearing overruled December 10, 1941.