**ADKINS et al. v. ADAMS et al.**

No. 8689.

Circuit Court of Appeals, Seventh Circuit.
Dec. 21, 1945.

Frank E. Trobaugh, of West Frankfurt, Ill., Moses Pulverman, of Benton, Ill., and Owen Rall and Tim G. Lowry, both of Chicago, Ill. (Eckert & Peterson, of Chicago, Ill., of counsel), for appellants.

Charles E. Feirich and John K. Feirich, both of Carbondale, Ill., J. G. Van Keuren, of Du Quoin, Ill., Thurlow G. Essington and Hamilton K. Beebe, both of Chicago, Ill., and Carter Harrison, of Benton, Ill., for appellees.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This appeal involves a controversy over the right to drill for oil upon a forty-acre tract of land in Franklin County, Ill. The complaint affirmatively shows the existence of diversity of citizenship and the requisite jurisdictional amount. By the complaint plaintiffs sought an adjudication that the right to the oil was in the plaintiff Adkins.

The case was tried by the court without a jury. The court made special findings of fact, rendered its conclusions of law thereon, and entered judgment that plaintiffs were entitled to the oil rights. To reverse the judgment, defendants appeal.

Our problem is whether the lessee in a lease under seal, dated January 1, 1909, executed by S. M. Boner and his wife to Wilmington Star Mining Co., in which, in consideration of $1 to them paid and the covenants and agreements therein contained to be kept and performed by the lessee, lessors have demised, leased and mine let "all the coal and other minerals or mineral substances contained in or underlying [describing the land] * * * together with the right to enter upon and into said premises and to dig, mine or remove said coal and other minerals or mineral substances, or any part thereof, at such time and in such manner as * * * [lessee] may elect * * *," became vested with the right to the oil underlying the land.

In the lease, the lessors granted so much of the land as might be necessary to be used for the proper and economical mining of the coal and other minerals. It also provided that all the rights and privileges granted therein, together with all tunnels and underground passages, might be used by the lessee for mining purposes until such time as all the coal in the lands which the lessee may desire to mine shall have been exhausted.

As a part of the consideration, the lessee was required within two years to commence the sinking of air shafts. The lease specified royalty payments on the coal, and in case any mineral other than coal was mined, then the usual and customary price paid therefor should be paid for such mineral when mined, and that in default of any payments, lessee should forfeit all its rights under the lease.

About $50,000 has been spent on the shafts and $175,000 to get ready for operations. More than 1,000,000 tons of coal have been mined from the No. 6 vein and lessors and their successors have been paid therefor as provided by the lease. Approximately one-half of the coal still remains to be mined. None of the No. 5 vein has yet been mined, although that vein is being mined in adjoining counties and plans have been made to mine that vein in the land in question.

On July 12, 1918, the lessors, "subject to a certain lease given by the grantors to the Wilmington Star Mining Co., together with the conditions named therein in said lease," conveyed the premises by warranty deed to H. M. Ragsdale. By mesne conveyances, defendant Adams acquired the title, subject to the lease herein involved.

About 1937 oil was discovered in Southern Illinois, and plaintiff, Old Ben Coal Corporation, assignee and successor to Wilmington, endeavored to have its properties developed for oil. More than 60 holes were drilled within two miles of the land described in the lease, only 12 of these wells produced oil and gas, but no well has been drilled on the 40 acres involved in this suit. February 11, 1943, Old Ben Corporation and E. S. Adkins entered into an

oil and gas lease covering and including the 40-acre tract in question.

The essential findings of the court are these facts: That in 1909 when the lease was executed the parties to the lease were primarily interested in the mining of the coal and in protecting their interests in that field of development. It was not then known that oil, gas and other minerals or mineral substances, other than coal, underlay the premises in paying quantities or would ever become commercially desirable, and there were no facts existent justifying exploration, but the lessee would not have entered into the lease without control of all the mineral and mining rights, since at some future time a test for oil might be desirable and, if found, it might become desirable to drill wells. Lessors were willing to give and did give over the control of all mining on the premises as an inducement to obtain a favorable contract for the development of coal.

The conclusions of law were that the lease was valid; that there was no express covenant and no covenant could be implied under the facts and circumstances binding the lessee or its successors in title to explore for oil or gas within a reasonable time; that all rights arising under the lease were owned by plaintiffs Adkins and Old Ben Coal Corporation; and that Adkins was vested with the exclusive right to drill for, produce and market the oil and gas underlying or which might be produced from the premises.

The all important question in this case is whether a covenant to explore for oil within a reasonable time should be implied, although defendants also contend that the findings of fact are not sustained by the evidence. From our examination of the entire record, we think there was evidence supporting the findings, and since we cannot say that they are clearly erroneous, they must, on appeal, be accepted by us, Federal Rules of Civil Procedure, Rule 52 (a), 28 U.S.C.A. following section 723c; hence we proceed to consider the vital question whether the lease contains an implied covenant requiring the lessee to explore for oil with reasonable diligence.

Defendants insist that gas leases are construed strictly against the lessee; that where a landowner grants a lease for oil and gas purposes and the lessee agrees to pay therefor a share of the oil and gas produced, the principal consideration of the lessee is to pay the royalties; and that in such a situation there is an implied covenant that the lessee will act with promptness in drilling wells for the discovery and production of oil and gas or forfeit his right to do so. They rely principally upon Crain v. Pure Oil Co., 10 Cir., 25 F.2d 824; Daughetee v. Ohio Oil Co., 263 Ill. 518, 105 N.E. 308; Stoddard v. Illinois Improvement & Ballast Co., 275 Ill. 199, 113 N.E. 913; and Simpson v. Adkins, 386 Ill. 64, 53 N.E.2d 979.

On the other hand, plaintiffs contend that a covenant may not be implied on any subject where the written contract contains a specific provision in regard thereto.

A contract between parties dealing in oil and gas is subject to the same rules of interpretation as any other contract, O'Donnell v. Snowden & McSweeney Co., 318 Ill. 374, 379, 149 N.E. 253. An implied covenant is one which may reasonably be inferred from the whole agreement and the circumstances attending its execution. The whole subject matter of implied covenants is based upon the proposition that the court called upon to interpret the contract is endeavoring to ascertain and carry out the intention of the parties. In that endeavor, the court must look at the entire contract, the purpose to be accomplished and all the circumstances surrounding the transaction, that is to say, the lease should be so construed that full force and effect is given to each word and term employed in the lease. The intention of the parties is to be ascertained from the entire instrument and not from detached portions, it being necessary to construe all its parts in order to determine the meaning of any particular part as well as of the whole. Farmer v. Reed, 335 Ill. 156, 166 N.E. 498; O'Donnell v. Snowden & McSweeney Co., supra; and Shell Oil Co. v. Moore, 382 Ill. 556, 48 N.E.2d 400. However, in order that an unexpressed term may be implied, the implication must arise from the language employed in the instrument or be indispensable to effectuate the intention of the parties, 17 C.J.S., Contracts, § 328, p. 779.

It may be well at this point to discuss the cases claimed by defendants as supporting their contention.

In the Crain case, supra, lessor received $1 for the mineral interest and no other benefit. The lease contained no provision requiring the lessee to search for oil and gas. To hold that the lessee could retain the mineral rights indefinitely, the court said would be unreasonable and inequitable.

We agree. But here the lessee was required to sink air shafts and pay royalty at 2½ cents per ton for the coal, and in case any mineral other than coal was removed, to pay the usual and customary price paid therefor. The lessors and their assigns have been paid $26,161.19 for the coal mined and Old Ben, pursuant to the lease, has invested a quarter of million dollars. Clearly that case is distinguishable from our case.

The Daughetee case, supra, involved an oil and gas lease. By the terms of the lease, there was an express covenant to complete one test well within a certain time. The court held, after a test well had been drilled and oil found in paying quantities, that there was an implied covenant to proceed to drill other wells. In the Stoddard case, supra, the lease was given for the purpose of quarrying stone. The lessees covenanted to pay rent or royalty for stone removed from the premises as long as the property was suitable for quarrying purposes. The court held that there was an implied covenant that lessees would quarry stone with reasonable diligence if found and so long as found in quantity and kind that might be quarried at a profit. In the Simpson case the lease recited that the sole and only purpose for which the land was leased was the drilling and operation of oil wells. These cases are inapplicable and do not sustain defendants' contention that the lease here involved contained an implied covenant requiring the lessee to explore for oil with reasonable diligence.

The courts cannot make contracts for parties, and can declare implied covenants to exist only when there is a satisfactory basis in the express contracts of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties in the contracts made. Before a covenant will be implied in the express terms of a contract, it must appear therefrom that it was so clearly in the contemplation of the parties as that they deemed it unnecessary to express it, and therefore omitted to do so, or that it is necessary to imply such covenant in order to give effect to and effectuate the purpose of the contract as a whole. Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S.W. 2d 1039, 1041, 60 A.L.R. 890.

In the instant case the lessee was granted all of the coal and other minerals and the right to dig, mine and remove the "coal and other minerals or mineral substances." The quoted words include oil. Shell Oil Co. v. Moore, supra, and Shell Oil Co. v. Dye, 7 Cir., 135 F.2d 365. The lease is not silent upon the subject of development. It provides that the coal and other minerals or mineral substances may be removed at such time and in such manner as the lessee "may elect." As already noted, courts cannot make contracts for parties. The parties are at liberty to expressly contract upon the subject, and, as between themselves, the contract is binding and their rights are measured by its terms, Brimmer v. Union Oil Co., 10 Cir., 81 F.2d 437, 440, 105 A.L.R. 454, even though the contract as written operates harshly as against one party or the other, neither can complain, if it was voluntarily entered into, as long as its terms are fulfilled. Poe v. Ulrey, 233 Ill. 56, 84 N.E. 46. The parties may make such contracts as they see fit, and when an oil and gas lease provides how and when search for oil or gas shall be made, there is no room for implication. Skinner v. Ajax Portland Cement Co., 109 Kan. 72, 197 P. 875; McKee v. Thornton, 79 Okl. 138, 192 P. 212; Simms Oil Co. v. Flewellen, 138 Tex. 63, 156 S.W.2d 521; Cowden v. Broderick & Calvert, 131 Tex. 434, 114 S.W.2d 1166, 117 A.L.R. 61. An express covenant upon a given subject deliberately entered into without fraud or mutual mistake, excludes the possibility of an implied covenant of a different or contradictory nature, Brimmer v. Union Oil Co., supra.

In our case, we think it is clear from a plain reading of the lease that the lessors desired immediate development of the coal and that the lessee wanted the entire mineral state in itself and that the parties agreed that subject to the express provision relating to development of the coal, Old Ben could remove the minerals at such time as it might elect. We agree with the trial judge that "there was no intention that the lessee should be required or expected to explore for oil or gas within a reasonable time or at any specific time within the term of the lease, * * *." 54 F.Supp. 944, 952. Under such circumstances, there cannot exist an implied contract between the same parties in conflict with the express provisions of the lease. Walker v. Brown, 28 Ill. 378, 81 Am.Dec. 287; Ford v. McVay, 55 Ill. 119; Siegel v. Borland, 191 Ill. 107, 60 N.E. 863; and

Witkowsky v. Affeld, 283 Ill. 557, 119 N.E. 630.

The judgment of the District Court will be affirmed. It is so ordered.